**VITARROZ CORPORATION**

v.

**RIVER BRAND RICE MILLS, INC.**

No. 65 Civ. 2735.

United States District Court
S. D. of New York.

April 12, 1967.

Brumbaugh, Free, Graves & Donohue, New York City, for plaintiff.

Watson, Leavenworth, Kelton & Taggart, New York City, for defendant.

RYAN, District Judge.

In this suit charging unfair competition in the sale of packaged rice, defendant has moved for summary judgment. The complaint seeking temporary as well as permanent injunctive relief was filed in September 1965; no motion for temporary injunctive relief has been made by plaintiff.

The complaint, based on diversity, charges that defendant has competed unfairly with plaintiff by copying the "trade dress" originated, adopted and popularized by plaintiff for Blue Rose type rice packaged for sale to "the Puerto Rican market".

Defendant has denied the charges alleged. It has taken depositions of plaintiff's two principal officers. On the basis of these depositions and its affidavits with exhibits attached, defendant moves for judgment for the reason that there is no genuine issue of fact.

Plaintiff has not registered its mark; but defendant registered its mark in 1958 and the time within which to contest its validity has expired. 15 U.S.C. § 1115(b). Plaintiff's claim here is one of unfair competition. The question presented on this motion is, whether the ordinary customer viewing plaintiff's and defendant's packages on a store shelf, is likely to be confused, mistaken or deceived into believing that defendant's package is plaintiff's package.[1]

Plaintiff submits a list of the issues which, according to it, preclude the disposition of its claim summarily. These are: whether plaintiff's yellow package has acquired distinctiveness in the market place; whether defendant deliberately copied plaintiff's yellow package, and whether doing so constitutes an extrinsic element of deceit; whether there is likelihood of confusion; whether the trade here involved is more easily confused than the average customer; whether the appearance on the market of 8 other yellow packages of rice of other distributors is the result of defendant's unfair competition; whether the color yellow is being currently used for rice in the "Puerto Rican" market; and whether defendant and its distributors have been palming off their products for plaintiff's. Although numerous, the alleged issues resolve themselves into the simple one of confusion. If there is no copying and no likelihood of confusion, then defendant's intent and the other issues are immaterial.

What is not in dispute is the identity of the plaintiff's and defendant's respective packages; that there are at least 8 other brands of yellow packaged rice at least 4 of which are for "blue rose type" rice, and that while defendant packaged its rice in the same format but in the color white, its package was unobjectionable, presumably because it was not likely to cause confusion.

A visual inspection discloses the following about the packages in suit:

The similarities: they are both 5 lb. paper bags of "shiny, blue rose type" rice, in a yellow packaging with red and green and blue colors—in various places; and there ends the similarity.

The dissimilarities are numerous. To begin with, the names are totally different: plaintiff's name is VITARICE (on one side) and VITARROZ (on the other) printed in large black letters against a red oval and also printed in black hatched letters diagonally across the upper portion of the bag on both sides, beneath the center red oval is the word "brand" and also below the red oval and all growing out of a green oval patch are three light green palm trees, with green

---

1. This question, says defendant, can be answered by the Court without the need for a trial because a visual comparison of the two packages demonstrates that they are so different that the average purchaser would not be confused, so that the issue sought to be raised by plaintiff is sham and doomed to fail.

trunks; defendant's package has the name "RICO RICE" (on one side) and "RICO ARROZ" (on the other) in large red letters.[2] The center of the bag shows two multicolored two-inch high fighting roosters, feathers flying, against a background of wavy blue lines forming a rectangle from the upper corner of which sprouts a single palm tree having six dark green branches and a brown trunk; the bottom portion of plaintiff's bag says in black script and block letters "Extra Fancy", "The Finest Rice Shiny 'Blue Rose' Type", and below that in light green letters "Distributed by Vitarroz Corporation, Hoboken, New Jersey"; the defendant's package below the roosters says in blue block letters "Coated with Glucose and Talc. Wash before Cooking", then the word "Rice" appears in large red letters, then in blue block letters "Shiny Blue Rose Type", then in red letters "Excelente", and then below that in very large blue, block letters in a red rectangle "RIVIANA" underneath which in small block letters are the words "Riviana Foods Inc., Abbeville, Houston, New York". Plaintiff's bag has a white upper portion and two white side panels on which appear the words "VITARICE" horizontally in black letters and "VITARROZ" vertically in red letters (the converse for the other panel) and on which is black copy telling about the rice; the defendant's bag is yellow all over and running down the sides appear the words in very large red letters "RICO ARROZ" and "RICO RICE" respectively. These are the differences considered separately; they are in our opinion so numerous and so significant as to make the overall packages totally different one from the other.

■■ This brings us to the question of whether the Court may, at this stage, exercise its own judgment as to copying and the likelihood of confusion, when the facts are before it and no other facts are necessary to reach that judgment and do not appear to exist. Of course, confusion is a question of fact, but it is a question of fact which can be resolved summarily in a proper case. We know of no law or logic which places questions of confusion beyond the pale of summary judgment when there is no dispute on the material issues. Certainly, the cases are legion where the Court reached just such a conclusion of copying and likelihood of confusion on the facts before ·it and, on that finding, granted a preliminary injunction. The Court, on the facts before it, made the comparison and when it granted such relief it determined that there had been copying or that the public was apt to be confused. This is not necessarily, in law, a final determination, but in reality it practically has a fairly final effect on the one guilty of copying or causing confusion. (Colgate-Palmolive Co. v. North American Chemical Corp., D.C., 238 F.Supp. 81, 86; Triumph Hosiery Mills, Inc. v. Triumph International Corp., D.C., 191 F.Supp. 937.) Where the similarity or copying is so obvious as to leave no doubt that it is likely to cause confusion or mistake or deceive purchasers as to the source of the origin of the goods and the alleged copier can raise no genuine issue as to this, the Court may, as a matter of law, grant summary judgment and a permanent injunction to the plaintiff (Community of Roquefort v. William Faehndrich, Inc., 303 F.2d 494 (C.A.2, 1962)). This is just such a case—with the opposite result; and it is also a case where the so-called issue of fact is an issue of law, which we shall discuss later.

■ If the Court can determine likelihood of confusion as a matter of law, there is no reason why it may not determine absence of such likelihood of confusion (See Upjohn Co. v. Schwartz, 246 F.2d 254 (C.A.2, 1957)). The visual

---

2. Both plaintiff's and defendant's packages (as well as those of other competitors) have Spanish copy on one side of the package and English on the other side. For convenience of comparison, only the English sides will be compared. However, each package has language in Spanish on one side corresponding to the English on the opposite side.

comparison employed in reaching such determination is not that of the judicially trained mind, but that of the ordinary member of the purchasing public of which a Judge is one (Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568).

Returning then to the affidavits submitted by plaintiff on this motion and to the testimony of plaintiff's officers submitted by defendant, we find that plaintiff's claim of copying and unfair competition rests on the use by defendant of the color yellow. Although plaintiff makes general statements regarding the "format and color" of defendant's package, its entire argument rests on the association of its product with the color yellow. In fact, plaintiff admits that while defendant (with the same format) employed a white bag for its rice, it did not object. That it is the similarity of color which plaintiff complains of, is further evidenced by plaintiff's statements that it has "gone after" two other distributors of yellow packaged rice, and has warned them "about the use of yellow packages" and intends, at the conclusion of the present suit (depending on its outcome undoubtedly) to "go after others" using yellow packages for their rice.[3] The reason it has not gone after all the brands using similarly colored packages is, says plaintiff, because they are not competing in the same market as plaintiff's product. Yet defendant's photographic exhibit represents 8 brands of rice all in yellow packages found in various grocery stores in "Puerto Rican" neighborhoods—and plaintiff does not dispute the sales in this market of those brands.

We have no evidence as to the prices charged for their rice by these competitors, but we are informed by plaintiff that defendant's product sells at a price lower than plaintiff's to these "uneducated", "illiterate" people whose "economic condition is unhappily far below normal" (plaintiff's brief). The significance of the market, with this admission, becomes apparent and explains plaintiff's attack on defendant's yellow package of rice in the midst of so many other yellow packages of rice.

The plaintiff's emphasis is on the color yellow, this according to plaintiff is what enables the Puerto Rican customer to recognize plaintiff's package in the store because, says plaintiff, "reliance was placed on the visual effect of the package, principally the color yellow and the overall format, rather than the textural matter" and because, in its advertising, on which it spent $500,000, it "emphasized the color yellow of plaintiff's package"; plaintiff says that, in 1956, when plaintiff adopted and put in use the package in suit, no other distributor to its "knowledge, information and belief" was using "yellow packages for 'Blue Rose type' rice for sale to the Puerto Rican trade in the New York area or elsewhere."

The radio advertising script, attached as an exhibit, emphasizes that the child who was so scrawny and bothersome, allegedly has improved by reason of his consumption of rice and that he loves the bright package, "yellow with red letters"; the newspaper ad in evidence states that the rice is "sold only in yellow bags"; the advertising poster used by plaintiff is yellow, red and black.[4]

---

3. Plaintiff has not placed in evidence these "warnings"; in addition, there is an affidavit submitted by defendant by the owner of another brand "Arroz Isla", which states that, to plaintiff's knowledge, this brand was using a yellow bag for this type rice from 1958 to 1965 without complaint of any kind.

4. "Q What is distinctive about your package?
  A The color.

Q What color?
A Yellow. It did not exist before we put it on the market.
Q You say the color yellow did not exist before 1956?
A It existed but not on a package of rice that was marketed to the Puerto Rican trade. It may have existed in other parts of the country, but not in the New York area.
  *     *     *     *     *

No mention is made by plaintiff of any other identifying or distinguishing feature of its package or of defendant's; and no attempt whatsoever is made to point to any similarity between the two other than that of color. The reason is that, aside from color, there are no common features to the packages.

This is where, according to plaintiff, the copying, confusion and deceit lie—in that defendant, having once employed a white package for its rice, adopted a yellow package, for which plaintiff had by its efforts created a demand, in order to palm off its product as plaintiff's. No claim whatsoever is made that defendant's rice is inferior to plaintiff's and, because of this inferiority in quality, is detrimental to its good will or common law mark. Since the claim is that defendant's rice is the same as plaintiff's, the only injury to plaintiff's good will and pocketbook would seem to flow from the fact that defendant's rice is sold at a lower price than plaintiff's after plaintiff had created a market for its product.

■ This is plaintiff's complaint. It complains that it was enterprising enough to cater to and to reach the "Puerto Rican trade" and that it expended money and effort to capture this market; and that, after it had done so, defendant and others have come into the market to imitate and to reap the benefit of plaintiff's efforts. Assuming this to be so—although the uncontroverted evidence is otherwise—unless plaintiff can show that the entry into this market by defendant was accomplished through some invasion of plaintiff's property rights or that it resulted in confusion, it may not keep defendant or anybody else out (Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (C.A.2, 1959)).

■ The vital question—and it is a question of law—therefore is whether the color yellow, which is what plaintiff's efforts were directed to, as a general background color for packages of Blue Rose type rice sold in certain neighborhoods of New York City to consumers of Puerto Rican origin, is subject to exclusive appropriation by plaintiff. The answer is "No"! (Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795; Norwich Pharmacal Co. v. Sterling Drug, Inc., supra.)

■ Where appropriation is impossible of attainment, it is immaterial that one may have spent money and time in an effort to gain public acceptance of that which cannot become its exclusive property. The cases cited by plaintiff are to the same effect in that they hold only that where color is used in combination with other things, to mislead the public and market one's goods as those of another, that is where color is one of several identifying and arbitrary symbols, its use may be enjoined. (See Colgate-Palmolive Co. v. North American Chemical Corp., supra, where the Court found likelihood of confusion because color was one of four dominant features of plaintiff's package and was used with similar lettering, with a similar geometric design and with a similar display of brand name —in addition to 24 other lesser points of resemblance—the totality of which resulted in an overall appearance so similar to that of plaintiff's product as to be confusing. This is also the holding of Pro-phy-lac-tic Brush Co. v. Abraham & Straus, D.C., 11 F.Supp. 660 and Ohio Baking Co. v. National Biscuit Co., 6 Cir., 127 F. 116, cited by plaintiff. This is not the case here, and the fact that plaintiff did not attempt to register the color yellow as a background color for its package although it claims to have

Q Do you claim that the yellow background color on your package is what makes your package distinctive?
A Yes.
Q Is there anything else that makes your package distinctive?
A Well, primarily the yellow. We advertise it as such. We have people to ask for the yellow package. You will notice in the spot announcements we stress 'yellow package'."
(From plaintiff's President's deposition)

been using it exclusively for many years —is significant.

We have assumed for this motion that plaintiff's yellow package has become identified in the mind of the "Puerto Rican purchaser" with plaintiff's rice, even though that has not been established. Plaintiff goes into great detail as to the efforts it has made in this direction, but there is not the barest showing that its campaign has had any effect on the mind of the purchaser. In view of the numerous yellow rice packages in the market, it would be quite impossible to make any such showing.

Finally, on the question of confusion, plaintiff attempts to limit the purchasing market by arguing that, while the ordinary purchaser might not be deceived, the particular purchaser here, being "illiterate in English", "of a low economic level" and less sophisticated, is more likely to be confused between plaintiff's and defendant's product. In the absence of a clear showing of wanton copying, the law does not attempt to protect the careless or inattentive buyer (Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755 (C.A.2, 1960)). The test generally is the purchaser exercising due care in the market place. It appears that both packagings had all that was printed in English repeated and printed in equal size on the reverse side in Spanish. It also appears that both packages were sold in stores where the help was Spanish-speaking. If the purchaser was as illiterate and naive in the purchase of his staple food as plaintiff would make him out, he was also a connoisseur with respect to this principal item of his diet. The appearance of the colorful fighting cocks on defendant's package would certainly be a particularly identifying feature by which the purchaser would be able to distinguish one package from the other—

assuming, of course, that he did not look at anything else. "Indeed, it stretches credulity to imagine a purchaser confusing these disparate articles." (Norwich-Pharmacal Company v. Sterling Drug, Inc., supra, 271 F.2d, p. 571.) Plaintiff's evidence in this regard was ridiculous and would have been inadmissible on a trial. Attached to an affidavit of a photographer was a photograph of what appeared to be 2 piles of bags of rice—one, a pile of plaintiff's, VITARROZ, bags; and the other of defendant's, RICO, bags; behind each of which was a piece of cardboard with crude lettering advertising a special of Vitarroz Rice (plaintiff's presumably). All this exhibit did was to point up the difference in price between the 2 brands. The other example of "confusion" was given in an affidavit of a salesman of plaintiff to the effect that a retail customer requested "Vitarroz" and was given "Rico" rice; and that, when he, the salesman, pointed this out, she apparently did not care but went on her way (perhaps because she had saved some money).

Plaintiff has totally failed to establish the existence of any genuine issue of fact which might establish copying or likelihood of confusion. Evidence of defendant's intent, where it has done nothing actionable, is immaterial—even if plaintiff could show, which it has not, that defendant deliberately copied plaintiff's color in order to compete with plaintiff's product. (Norwich Pharmacal Company v. Sterling Drug, Inc., supra.) A most casual comparison between the two packages fails to disclose the remotest possibility of likelihood of confusion, and plaintiff has shown none. The color yellow alone may not become plaintiff's property. There is no need for this Court to defer its judgment and, accordingly, it grants defendant's motion. The complaint is dismissed with costs and counsel fees to be fixed. Settle judgment on notice. So ordered.