WARNER BROS., INC., Film Export, A.G., and DC Comics, Inc., Plaintiffs,

v.

AMERICAN BROADCASTING COMPANIES, INC., Defendant.

AMERICAN BROADCASTING COMPANIES, INC., Third-Party Plaintiff,

v.

STEPHEN J. CANNELL PRODUCTIONS, Third-Party Defendant.

No. 81 Civ. 1551 (CBM).

United States District Court, S. D. New York.

Jan. 20, 1982.

ence to the exhaustion-of-state-remedies test developed under 28 U.S.C. § 2254(b).

Weiss, Dawid, Fross, Zelnick & Lehrman by Allan Zelnick, Richard Lehv, New York City, for plaintiffs Film Export, A.G. and DC Comics, Inc.; Bruce S. Kaplan, New York City, of counsel.

Weissman, Wolff, Bergman, Coleman & Schulman by John Schulman, Los Angeles, Cal., for plaintiff Warner Bros., Inc.; Dean A. Ziehl, Los Angeles, Cal., of counsel.

Hawkins, Delafield & Wood by Philip R. Forlenza, Laura V. Jones, New York City, for defendant American Broadcasting Companies, Inc.

Townley & Updike by Richard Barnes, Douglas C. Fairhurst, Robert L. Raskopf, Mary D. Faucher, New York City, for third-party defendant Stephen J. Cannell Productions.

## OPINION

MOTLEY, District Judge.

In this opinion, the court grants summary judgment for defendants, holding, as a matter of law, that defendants' works (consisting of a two-hour premiere television show and seven one-hour television episodes) are not substantially similar to plaintiffs' works (consisting of two movies, three television shows, and approximately twenty comic books), and that there is no likelihood of confusion between the parties' works.

Plaintiffs, owners of the copyrighted motion pictures, television shows and comic books featuring the well-known character Superman, are suing defendants, the creators and broadcasters of the television series featuring a superhero named Ralph Hinkley and entitled The Greatest American Hero (TGAH). Plaintiffs previously sought a temporary restraining order and preliminary injunction enjoining the broadcast of the pilot of TGAH. This court denied plaintiffs' application. *Warner Bros., Inc. v. American Broadcasting Companies, Inc.*, 523 F.Supp. 611 (S.D.N.Y.1981), 211 U.S.P.Q. 51 (Injunction opinion). The Court of Appeals for the Second Circuit upheld the denial of interim relief after viewing, as this court had, plaintiffs' first movie ("Superman—The Movie"), several of plaintiffs' comic books, and defendants' pilot program. *Warner Bros., Inc. v. American Broadcasting Companies, Inc.*, 654 F.2d 204 (2d Cir. 1981) (Circuit opinion). For a more detailed background discussion of the nature of the characters and works involved in this litigation, the reader is referred to the above-cited opinions.

At a pre-trial conference following the Second Circuit's decision in their favor, defendants moved for summary judgment. The motion was denied on the ground that the court could not determine whether a reasonable jury could find the issue of substantial similarity in favor of plaintiffs because the court, at that juncture, had not seen all of plaintiffs' or defendants' works in question.

On November 30, 1981, the day trial was scheduled to begin in this action, the court began a pre-trial conference with the parties. After several days of reviewing the proposed trial evidence, the conference finally entailed an item-by-item review of all the evidence the parties proposed to intro-

duce at trial and the court's rulings thereon. The court decided to view plaintiffs' movie "Superman II" and the defendants' seven additional episodes of TGAH in connection with its reconsideration of defendants' motion for summary judgment. After the review and extensive oral argument, the court again denied the motion. At the conclusion of the two-week-long pretrial conference, the court once again decided to reconsider defendants' motion for summary judgment on plaintiffs' claim of alleged copyright infringement. The court this time granted the motion and advised the parties that it would write a memorandum opinion and certify the question of substantial similarity to the Court of Appeals pursuant to 28 U.S.C. § 1292(b). Now, however, upon reconsideration of all the evidence and the relevant legal standards, the court has decided to grant summary judgment in favor of defendants as to both the copyright claim and the unfair competition claims. The court holds that, as a matter of law, there is no substantial similarity between defendants' works and plaintiffs', or between defendants' and plaintiffs' main characters. The court further holds that there is no likelihood of confusion and, therefore, all of plaintiffs' unfair competition claims are without merit.

## SUBSTANTIAL SIMILARITY STANDARD

■ In this Circuit, a defendant's motion for summary judgment on a copyright claim may be granted "if, after assuming copying, the Court finds that any similarity between the works is insubstantial." *Musto v. Meyer*, 434 F.Supp. 32, 36 (S.D.N.Y.1977), aff'd, 598 F.2d 609 (2d Cir. 1979). In addition, where there are similarities between the works, but "the similarit[ies] pertain[ ] solely to noncopyrightable material, summary judgment is appropriate." *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 915 (2d Cir. 1980). In the instant opinion the court assumes that defendants had access to all of plaintiffs' works and copied from them. The court concludes, however, after viewing all of plaintiffs' and defendants' works in contention, that "both as to incident and character, the defendant[s]

took no more . . . than the law allowed." *Nichols v. Universal Pictures Corporation*, 45 F.2d 119, 121 (2d Cir. 1930), cert. denied, 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931).

■ To resolve the issue of substantial similarity, the court must distill the protected parts of a work from the unprotected. This is because, as stated in a previous opinion involving Superman, "a copyright never extends to the 'idea' of the 'work,' but only to its 'expression,' and no one infringes, unless he descends so far into what is concrete as to invade that 'expression.'" *National Comics Publications v. Fawcett Publications*, 191 F.2d 594, 600 (2d Cir. 1951).

This court concludes that what defendants took from plaintiffs' works and incorporated into TGAH were unprotected ideas. Chiefly, what was taken was the idea of a superhero who fights evil—a benevolent super-human. In this instance, a super-man. Encompassed within the idea of a superman are the usual human attributes of sight, hearing, strength, etcetera, which are magnified far beyond human capacity, together with abilities, such as the ability to fly, which are not human attributes, but which man has long desired.

## IDEAS COMMON TO THE WORKS

Both main characters have the following attributes:

Super-strength. A magnification of the human abilities to lift, throw and move objects physically. This ability is common to Superman and Ralph Hinkley. Note that Mr. Hinkley only possesses this ability and his other superpowers while wearing his suit, whereas plaintiffs' character has his powers at all times, as displayed by Clark Kent in "Superman II" rescuing Lois Lane near Niagara Falls, and in the television programs viewed by the court (in one episode, Clark Kent bends and straightens an iron bar to demonstrate his super-strength to a blind girl). Consequently, when discussing the common ideas, the court's references to Hinkley's powers are to Hinkley inside his

super-suit, while the references to Superman include Superman both in and out of his costume.

Super-hearing. A magnification of the human ability to hear. Common to Superman and Hinkley.

Super-vision. Encompasses both the ability to see far distances and the ability to see through objects. Common to Superman and Hinkley.

Super-speed. The ability to run, or do other such normal activities at a greatly accelerated speed. Common to Superman and Hinkley.

Super-breath. The ability to blow super-hard (perhaps first popularized by the Big Bad Wolf in "Three Little Pigs"). Common to Superman and Hinkley.

Invulnerabilty. Superman and Hinkley are both invulnerable to blows (see: Achilles) and bullets.

All of the above similarities involve human abilities and attributes magnified greatly.

The ability to fly. While this is not the magnification of a natural human attribute, it remains a non-protectible idea. It is neither concrete enough to be protected nor original to plaintiffs. It is also a prime example of a power which Hinkley never masters, even with his suit on.

It is important to note how the superpowers and super-beings are perceived by the characters in the different works. In the Superman works, none of the characters, least of all the main character, finds the idea of a person with super-human qualities implausible. The existence of a super-being is quite acceptable in the Superman works, where the entire world seems to know of Superman, and believe in him. In TGAH, however, not only do very few people know of the super-being, but the great majority of people do not believe such a being could exist. Thus, in one of defendants' episodes, "The Hit Car", it was revealed that when two of the villains told people they saw a man fly, they were sent to a mental hospital. (See also the discussion with respect to the costumes the main characters wear, *infra*.)

The court notes, but does not find controlling, that there are some powers which Superman appears to have that Hinkley does not. One example is the power to reverse time (shown in "Superman—The Movie"). Another example is the power to induce amnesia by kissing Lois Lane (demonstrated in "Superman II").

Other ideas common to the works:

Close encounters with alien beings. Both Hinkley and Superman have contact of a sort with alien beings. However, as is the case with most or all of the commonalities involved in the works, this can only be considered a common idea in the most general way. Superman is himself super-human, and for him contact with beings or images of beings from other planets is to be expected. He sees, in his Fortress of Solitude, long-departed relatives of his. He feels comfortable in their company. For Hinkley, however, contact with beings from elsewhere is unexpected, and generates within him excitement, agitation, and some incredulity. He does not seem comfortable with the aliens he encounters. Additionally, Superman can communicate with his alien images. He can ask questions and be answered. Hinkley does not have the same ability to convey information or questions to his alien contacts. Nor could the settings be more different, as Superman's is in the Arctic, while Hinkley encounters his aliens in a desert.

Alter-ego. This is an idea which is subsidiary to that of a super-hero fighting evil. As the super-hero cannot be hurt directly, he knows that the "forces of evil" will try to attack him through his more vulnerable friends and relatives. (Hinkley has at least one living relative, while Superman does not appear to have any.) To prevent this from happening, the super-hero conceals his dual identity, even from his friends. It is notable that in the situations involved in the instant case, Hinkley has a side-kick (FBI agent Bill Maxwell) and a girl-friend (Pam Davidson) who know of his double-identity, while no one knows of Superman's.

In TGAH, it wasn't even Hinkley's idea to keep his identity a secret. It was Maxwell's.[1] In the pilot, Hinkley tells his name to the police and a nurse while wearing his costume. By contrast, Superman, in Action Comics No. 309 (Pl. Exh. 162 in the pre-trial order), enlists the aid. of the president of the United States to keep his alter-ego a secret. In short, whereas the concept of a dual identity is in general common to plaintiffs' and defendants' works, the similarity is a result of the common setting of a super-hero fighting evil. Any viewing of the works at issue shows vast differences in the portrayals.

Costume. Each main character wears a costume of the type common to super-heroes. That a super-hero wears such a costume can never, without more, be copyrightable. The question is whether the appearances of the two costumes are substantially similar. As noted elsewhere, they are not. Circuit opinion, 654 F.2d at 210. Moreover, the way the characters feel about the appearances of their respective costumes is totally different. Superman takes his positively, and stands tall in his outfit. Hinkley is clearly embarrassed by his suit and is reluctant to be seen in it.[2]

The question which confronts the court, given the common ideas or general likenesses set forth above, is whether the expression of the ideas is substantially similar. Put another way, the court must determine whether "the similarities are ... sufficiently particular and concrete" to permit a jury to find "an appropriation of the protected expression of the plaintiffs' works." Circuit opinion, 654 F.2d at 209. As in any such copyright case, the proof here is in the viewing. Accordingly, the court has examined all the works in question and the two

super-hero characters therein to determine whether there is sufficient similarity of expression to permit a reasonable jury to conclude that the average lay observer would recognize defendants' works as having been appropriated from plaintiffs'. See *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966).

## A· COMPARISON OF THE WORKS IN CONTENTION

It is neither feasible nor necessary in this opinion to discuss individually and in detail each of plaintiffs' works and each of defendants' works for the purpose of comparing them. An overview of the works will suffice.

A viewing of the works reveals certain things. One thing which is apparent from a viewing of defendants' works is that, contrary to plaintiffs' assertion, the portrayal of Ralph Hinkley in the subsequent episodes is not substantially different from his portrayal in the pilot episode. Another thing which is readily apparent is that the common ideas discussed above are expressed differently in defendants' works as opposed to plaintiffs'.

This court and the Court of Appeals have previously compared "Superman—The Movie" and the pilot of TGAH, finding them not substantially similar. In the context of the instant reconsideration of the motion for summary judgment, the court now holds that no reasonable jury could find the works to be substantially similar.

As the Court of Appeals stated in its opinion, "plaintiffs *cannot seriously contend* that the pattern of scenes, sequence of incident, principal characters, or the general theme between [defendants' pilot] and 'Superman, The Movie,' ... are substantially similar. Quite to the contrary, ... the

---

1. Thus, in the episode entitled "The Hit Car", Bill Maxwell says to Pam Davidson:

    "We can't go blabbin' this thing all over everybody. So far you're the only other person knows Ralph's got the suit. It's got to stay that way."

2. Thus, in the pilot, Hinkley says:

    "I could kill the guy who designed this suit.... Why did it have to be long johns and a cape? I put this thing on I feel like I'm six years old."
    And in "The Hit Car", the following colloquy takes place:
    Student about to perform Shakespeare—"I ain't puttin' on no long johns."
    Hinkley—"I know how you feel about that."

'total concept and feel' of the two works greatly differ." Circuit opinion, 654 F.2d at 211. (emphasis added; citation omitted).

The same can be said of a comparison of any of plaintiffs' works with any of defendants'. A comparison of the pilot or any of the seven subsequent episodes of TGAH involved in this litigation with either of plaintiffs' movies, any of its television programs or any of its comic books—all of which the court viewed in connection with this motion—leads inevitably to the conclusion that no substantial similarity exists, and leads this court to hold that no reasonable jury could find any of defendants' works to be substantially similar to any of plaintiffs'. The proof, as in any copyright case, is in the viewing, and a viewing of the works reveals that defendants' expression of the ideas common to defendants' and plaintiffs' works is, at most, insubstantially similar.

The court has also considered plaintiffs' works as a group. The court used this analysis because it is conceivable that a party could appropriate scenes from each of a number of the Superman works to create a product similar to the whole of the works without making it substantially similar to any individual work of plaintiffs. The court concludes that plaintiffs' works considered as a group, and defendants' works, considered individually or as a group, are also insubstantially similar as a matter of law.

## A COMPARISON OF THE CHARACTERS IN CONTENTION

■ Cases in this Circuit recognize that characters may be protected out of the context of the story line or lines in which they appear in a copyrighted work or works. *See Goodis v. United Artists Television, Inc.*, 425 F.2d 397, 406 (2d Cir. 1970); *Nichols v. Universal Pictures Corp., supra*, 45 F.2d 119, 121 (2d Cir. 1939); *United Artists Corp. v. Ford Motor Co.*, 483 F.Supp. 89 (S.D.N.Y.1980).

■ The method of analysis to be used in a character infringement claim was stated by Professor Nimmer as follows:

> In determining whether any given appropriation of another's character constitutes an infringement, the problem is twofold. First was the character as originally conceived and presented sufficiently developed to command copyright protection, and if so, secondly did the alleged infringer copy such development and not merely a broader and more abstract outline.

3 Nimmer On Copyright § 2.12 at 2–169 (rev. ed. 1980).

As he is displayed in pictures in comic books, and by actors in the television and movie works, Superman is more readily protectible than he would be had he been merely a word portrait. *See Ideal Toy Corp. v. Kenner Products Division of General Mills Fun Group, Inc.*, 443 F.Supp. 291 (S.D.N.Y. 1977).

After forty years of development in various media, Superman is a well-defined character sufficiently developed to deserve copyright protection. Is defendants' character substantially similar to plaintiffs'?

In considering the issue of substantial similarity of the characters Superman-Clark Kent and Superhero-Ralph Hinkley, the court has taken an expansive view. If a reasonable juror could find that defendants' character is substantially similar to Superman as the latter is portrayed in the movies *or* as portrayed in the comic books *or* as portrayed in the television series, there would be an issue for the jury. An examination of the characters has shown, however, that there is no such similarity, and no issue for the jury.

This court has already concluded that the characters as portrayed in plaintiffs' first movie and defendants' pilot are so dissimilar as to preclude a finding of substantial similarity. No reasonable jury, the court now holds, could find otherwise. Having viewed the remainder of the works in question, the court has come to the conclusion that the characters are no more similar in the works not previously before the court than they were in the works viewed for purposes of plaintiffs' application for preliminary relief. For example, the Super-

man character in the television programs viewed by the court is, if anything, even stiffer than the one in the movies. Briefly put, the character the court saw in those of plaintiffs' works not previously seen ("Superman II", the comic books and the television shows) is the same non-stylish, broad-shouldered, big-muscled, calm and confident "square" referred to in this court's prior opinion. Superman, as he has always been portrayed, is not at all similar to defendants' character as portrayed in TGAH.

The question then becomes whether plaintiffs' Superman is at all similar to the character in any of defendants' one-hour episodes of TGAH.

The court viewed the seven sequels to determine whether a reasonable jury could find that defendants' character changed subsequent to the pilot so as to become more similar to Superman. As with plaintiffs' contention that the works subsequent to the pilot are similar to the Superman works, the proof of the validity of their contention that Hinkley changes in these subsequent works so as to be more like Superman is in the viewing of the works, and the viewing is conclusive. Defendants' character does not change in any significant manner. Hinkley looks the same in the sequels. He is the same bumbler he was in the pilot. He is still portrayed as the model American young man of the 70's and 80's—trim, hungry-looking, non-macho, concerned with family and the everyday problems of life. He remains all too human. He remains embarrassed to be seen in the suit. He remains the average man in a highly incongruous situation—given super-human powers and a superman-sized responsibility he did not ask for but which he accepts with reluctance and internal confusion. Just as no reasonable jury could find that the character in the pilot was substantially similar to Superman, none could find the character in the sequels to be substantially similar. As the Court of Appeals wrote regarding the characters as portrayed in the works before it:

The Superman works portray a benevolent superhuman who seeks to achieve noble goals through the exercise of innate superpowers while at the same time trying to maintain the secrecy of his true identity in order to occupy a position in society as an ordinary person. [Ralph Hinkley] on the other hand, is a "mirror image" of the Superman character. Hero depicts a typical, young American man with common everyday problems who attempts to cope with the impact upon his life caused by the superhuman powers that are foisted upon him by unidentified alien beings.

Circuit opinion, 654 F.2d at 211.

Plaintiffs have tried to convince the court that scenes showing Superman or Superboy without his super-human powers show their character to be more similar to defendants'. The court is unpersuaded by this argument, as it disregards the fundamental differences between the characters. Superman is a being from another planet, endowed with certain powers which he has while on Earth. He has lived with these powers since arriving on the planet (or since birth, although on his native planet the powers were not unusual). Although certain unearthly things (such as a Red Sun) can cause him to lose his powers, he essentially is in possession and control of his powers as long as he is on Earth (and not far into the past or future). Episodes showing Superman without his powers do not change his character but merely show him in different situations.

By contrast, defendants' character is a normal human being given a suit with powers. He never is in total control of the powers given him. Thus, he always flies somewhat out of control, and lands at his own risk. He is new to his powers and uncertain about them.

While Superman is often lost without his powers, Hinkley is somewhat lost with his. Superman takes his powers for granted and forgets when he does not have them, or is unaware of the consequences of not having them. Thus, in "Superman II", Clark Kent without his superpowers is beaten up. Hinkley is somewhat afraid of his powers (or of his lack of control over them) and at times is unaware of the consequences of

having them. Thus, at the end of the TGAH pilot, Hinkley, forgetting he is wearing his super-suit, shakes Bill Maxwell's hand too vigorously and breaks it.

A further difference between the characters is that Hinkley, unlike Superman, does not perceive his powers as his reason for being. Consequently, he is as concerned about his teaching career as he is about being a superhero.

In short, the court concludes that in all the settings where plaintiffs' character is shown without his powers, or out of control of them, the character does not change. In these works (which the court has already stated are not substantially similar to any of defendants' works) plaintiffs' character looks the same as in the other works. He fights for the same Truth, Justice, and the American Way. He is the same resourceful character as always. And he is no more similar to the insecure, excitable, often-embarrassed Ralph Hinkley in these episodes than anywhere else.

In sum, the court concludes that the main characters in plaintiffs' and defendants' works are "so dissimilar as to preclude a finding of substantial similarity," and holds that no reasonable jury could find otherwise.

## CONCLUSION AS TO COPYRIGHT CLAIMS

The expression of the ideas contained in the works of plaintiffs and defendants differs greatly. Too greatly, the court concludes, to send the issue of substantial similarity to the jury. The "total concept and feel" of the works in contention are too different.

As was the case in *Bevan v. Columbia Broadcasting System, Inc.*, 329 F.Supp. 601 (S.D.N.Y.1971) (*Bevan*), a comparison of the alleged similarities involved in the instant case has led the court to the conclusion that there has been no statutory copyright infringement. As Judge Tyler, who found it necessary in *Bevan* to grant judgment notwithstanding the verdict on the statutory copyright claim stated with respect to the alleged similarities there:

Quantitatively impressive, these apparent similarities break down under the closer, detailed examination which the copyright law requires [citation omitted]. Comparison which focuses, as I believe it should, on the dramatic mood, the details and interplay of the characters, and the dynamic of events indicates such substantial dissimilarity as to render the jury verdict [in favor of plaintiff] erroneous even under the exacting standard appropriate to a motion for judgment n. o. v.

329 F.Supp. at 605. A similar analysis mandates the same conclusion in the instant case. Thus, obviating trial on the copyright issue, the court grants summary judgment, finding defendants' works, as a matter of law, to be not substantially similar to plaintiffs' works.

## UNFAIR COMPETITION CLAIMS

Plaintiffs have also asserted a variety of unfair competition claims against defendants. Plaintiffs, allege that defendants' works violate section 43(a) of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, constitute common law unfair competition, and violate section 368–d of New York State's General Business Law. The court has determined that summary judgment is appropriate to these claims for the reasons set forth below.

In the context of the motion for summary judgment on the plaintiffs' Lanham Act claim, the court presumes secondary meaning in the phrases and other indicia used by plaintiffs for their character. Thus, the phrase "it's a bird, it's a plane, it's Superman" has secondary meaning, as does the specific Superman costume. The court does not find, however, that plaintiffs have the right to claim secondary meaning and protection for ideas. Thus, as is true for their copyright case, plaintiffs cannot claim protection for ideas which defendants (presumably) appropriated—a superhero fighting evil, the ability to fly, etcetera.

## SUPERMAN "INDICIA" FOR WHICH PLAINTIFFS SEEK PROTECTION

1. The Powers. Plaintiffs seek to protect the Superman powers, including the ability to fly, super-strength and the others.

The court has already noted that these are non-protectible ideas. The court also finds incredible plaintiffs' contention that the visual images of Hinkley and Superman exercising their respective powers are similar. Hinkley's wobbly-shaky style of flying does not resemble Superman's smooth, confident style, the X-ray vision powers are displayed markedly differently in the works, and so forth. As the ideas behind the images are not protectible, *see D.C. Comics, Inc. v. Filmation Associates*, 486 F.Supp. 1273, 1277 (S.D.N.Y.1980), and the representations of those ideas are not at all similar, plaintiffs' Lanham Act claim, as far as it is based upon the Superman powers, must fail.

2. The costumes. What could be added to previous discussions about the differences between the costumes? That Superman's "S" insignia looks American, while Hero's "torch" emblem looks other-worldly? The Court of Appeals has already noted the vast differences between the costumes, as well as the common use of tight-fitting acrobatic costumes in the superhero genre. Circuit opinion, 654 F.2d at 210. Suffice to add at this point that defendants have not, as a matter of law, used a colorable imitation of the Superman costume in their works, and that plaintiffs cannot invoke the Lanham Act against the use of the Hinkley super-suit.

3. The phrases and names. As is well known, Superman is "faster than a speeding bullet, more powerful than a locomotive, able to leap tall buildings in a single bound." Ralph Hinkley was referred to in some of defendants' advertisements as follows: "He may be unable to leap tall buildings in a single bound, he may be slower than a speeding bullet, and he may be less powerful than a locomotive ... [but] he's just getting started." Examining the use of the two phrases, the court finds no possible likelihood of confusion. Defendants' usage of the phrase contrasts their character with plaintiffs'. Plaintiffs' description of their character leads off the television programs with a dramatic display of Superman's powers. Defendants' use of similar language is embodied in a commercial which humorously demonstrates Hinkley's lack of control over his powers. The defendants' use of the language points out his vulnerability, rather than his invulnerability. In defendants' commercial, "[t]he use of the negative destroys any rational basis for believing that defendant's [product] has any connection with plaintiff or its [product]." *Ringling Bros.—Barnum & Bailey Combined Shows, Inc. v. Chandris America Lines, Inc.*, 321 F.Supp. 707, 711 (S.D.N.Y. 1971). Moreover, the context in which defendants use the phrase points to the vast difference in the total concept and feel of the underlying works. The dramatic tone of plaintiffs' television show is underscored by the display of Superman's powers in its introduction. The humorous tone of defendants' show is presaged by the commercials' use of a voice saying "unable to leap tall buildings" while displaying a scene of Hinkley crashing into a tree.

As to the phrase "It's a bird, it's a plane, it's Superman," (which requires three performers and is more properly written "It's a bird!" "It's a plane!" "It's Superman!"), defendants' version again contrasts greatly with plaintiffs'. Plaintiffs' use of the phrase is commonly through a crowd of people shouting while trying to identify an object flying in the sky. Defendants' use of the phrase is as follows. In the pilot of TGAH, Ralph Hinkley looks at himself and his just-received super-suit in the mirror and whispers "It's a bird, it's a plane, it's Ralph Hinkley" as he struggles quietly, dejectedly, with his new responsibility. Defendants' version Distinguishes, Compares and Contrasts the characters, and does Anything But Constitute an actionable use of plaintiffs' familiar phrase. The phrase as used by defendant emphasizes the different natures of plaintiffs' and defendants' characters and would not lead a viewer to believe the same party created both. The same must be said of those times that the characters in TGAH refer to the names of characters in the Superman works.

4. Visual images of Superman. Finally, the court finds the same type of analysis as that used above mandates the conclusion that the imagery used in defendants' adver-

tisements showing Hinkley flying with the globe in the background, breaking free of shackles, opening his shirt to reveal a costume underneath, and so forth, do not infringe any of plaintiffs' "indicia of Superman", in which plaintiffs include images of Superman opening his shirt, or flying, or breaking free of shackles. As ideas or marketing techniques, these "indicia of Superman" are not protectible. *See Haagen-Dazs, Inc. v. Frusen Gladje, Ltd.*, 493 F.Supp. 73, 75 (S.D.N.Y.1980). As to the imagery actually used, defendants' imagery and the "total concept and feel" encompassed in the advertisements contrast so greatly from the imagery used in plaintiffs' works as to preclude any claims from arising from these indicia. For example, when Hinkley breaks free of shackles in a TGAH commercial, he does it in an un-Superman-like way, appearing surprised at his accomplishment. Of course, Hinkley is, himself, unlike Superman in appearance. Similarly, when Hinkley opens his shirt to reveal his costume, he never displays an image which resembles the Superman advertisements showing the torso of a man in street clothes with an unbuttoned shirt revealing the "S" insignia. Rather, Hinkley slowly unbuttons his shirt, and then reveals his costume to a "skeptic" who wants to know what all the fuss is about this new superhero arriving soon. The mere opening of a shirt to show an insignia beneath it cannot, of itself, be concrete enough to be a protectible trademark. *See D. C. Comics, Inc. v. Filmation Associates*, 486 F.Supp. 1273, 1277 (S.D.N.Y. 1980). As the images displayed are vastly different, there is no actionable infringement.

Without discussing each and every of the claimed "indicia of Superman" the court finds it sufficient to state that none of them involve a specific enough concept and image to warrant protection, or even to require a jury trial.

■ The key to plaintiffs' claims is whether, seeing the works involved (including, in addition to that viewed in connection with the copyright case, defendants' commercials for TGAH, and plaintiffs' t-shirts, tote bags, and other items) a viewer is likely to confuse the works, or believe that defendants' works were created, licensed, or approved by plaintiffs. *See McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1130 (2d Cir. 1979). Thus, "the touchstone of both trademark infringement and unfair competition is the likelihood of confusion among prospective purchasers [or viewers]." *Menley & James Laboratories, Ltd. v. Approved Pharmaceutical Corp.*, 438 F.Supp. 1061, 1066 (N.D.N.Y.1977). In plaintiffs' claim of false designation of origin, "there must be some showing that the public might be deceived," *Ringling Bros.—Barnum & Bailey Combined Shows, Inc. v. Chandris America Lines, Inc.*, 321 F.Supp. 707, 712 (S.D.N.Y.1971).[3]

■ In the instant case, the claimed likelihood of confusion has no material basis in fact (other than that some viewers might believe that *all* superhero programs are created by the same people, hardly a reason to grant relief) and the court has determined, as a matter of law, the absence of a likelihood of confusion. *See Vitarroz Corporation v. River Brand Rice Mills, Inc.*, 266 F.Supp. 981, 986 (S.D.N.Y.1967).

The court has already determined that there is no basis for a finding of substantial similarity between defendants' works and

---

**3.** In the instant case plaintiffs attempted to show confusion as to origin through use of a survey which showed that consumers associated plaintiffs' and defendants' products. The court held this to be inadmissible as not probative. The survey was deficient in many respects. For one thing, it showed association rather than similarity or confusion. For another, as the record will reflect, many of the answers were clearly based upon unprotectible ideas. For example, some consumers associated Hinkley and Superman because both flew.

Indeed, even as to the few consumers who appeared to think that the same producers might have created Superman and defendants' pilot the survey was unclear. Quite possibly, these consumers believed that all superhero programs emanated from the same source, or may have based their belief on the settings of the programs or merely the popularity of plaintiffs' work. In any event, as more fully noted on the record in open court, the court found the survey results not probative to the issues of confusion and similarity.

plaintiffs'. The standard already applied in the discussion of the copyright claims is very close to that to be applied to plaintiffs' unfair competition claims. *See Ideal Toy Corp. v. Kenner Products Division of General Mills Fun Group, Inc.*, 443 F.Supp. 291, 306 (S.D.N.Y.1977). The court, having determined that no reasonable jury could find the issue of substantial similarity of the works in contention in plaintiffs' favor, and having now seen all the works and other physical evidence (commercials, tote bags, shirts, etc.) in plaintiffs' case, now concludes that no reasonable jury could find in plaintiffs' favor on the issue of confusion or deception. Not only are the works themselves greatly different, but the "total concept and feel" of the works and promotions of defendants is entirely different from that of plaintiffs. A jury, after viewing the evidence, could not find that an "appreciable number of ordinary prudent [viewers] are likely to be confused as to the source of the product[s] in question. *McGregor-Doniger, Inc. v. Drizzle, Inc., supra*, 599 F.2d 1126, 1130 (2d Cir. 1979). Accordingly, summary judgment is granted in defendants' favor on plaintiffs' claim of false designation of origin.

## COMMON LAW UNFAIR COMPETITION CLAIM

The conclusions already arrived at regarding plaintiffs' copyright and Lanham Act claims lead the court to grant summary judgment as well on plaintiffs' claim of common law unfair competition. As already stated, defendants only appropriated to their works what the law permitted, ideas. In addition, the references to Superman phraseology and characters contained in TGAH distinguish the works. These references do not make defendants' works appear to be sponsored or approved by plaintiffs.

Although it is possible that defendants were encouraged by plaintiffs' superhero successes, such encouragement, without more, is not actionable. A defendant is permitted to "capitalize on a market or fad created by another provided that it is not accomplished by confusing the public [into believing] that the product is the product of the competitor." *American Footwear Corp. v. General Footwear Co.*, 609 F.2d 655, 662 (2d Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980).

As the court concludes that there can be no confusion stemming from the appropriation of *non-protectible* ideas, a jury would be precluded from finding a misappropriation or misrepresentation in the instant case.

Evidence of defendants' intent, which plaintiffs have urged upon the court, is unavailing to plaintiffs. Plaintiffs, in an effort to show that defendants intended to copy their Superman, point to, among other things, a script which refers to Hinkley's Hero costume as the "Superman suit". This evidence, however, shows only an awareness of plaintiffs' character rather than an attempt to copy it. *See United Artists Corp. v. Ford Motor Co., supra*, 483 F.Supp. 89 (S.D.N.Y.1980). The same applies to the deposition testimony offered, which merely shows that defendants were familiar with the Superman legend and some of the plaintiffs' works, rather than that defendants intended to copy plaintiffs' character. More importantly, evidence of an intent to copy is irrelevant where there is no actionable confusion, or likelihood of it. *Vitarroz Corporation v. River Brand Rice Mills, Inc., supra*, 266 F.Supp. 981 (S.D.N.Y.1967).

Thus, as the court finds the issue of a lack of likelihood of confusion to be beyond dispute, the court grants defendants summary judgment on plaintiffs' common law claim of unfair competition.

## NEW YORK LAW DILUTION CLAIM

As plaintiffs cannot show a likelihood of confusion, their claim under Section 368–d of the New York General Business Law must also fail. *Substral America, Inc. v. Gillette Interim Subsidiary, Inc.*, 659 F.2d 1062, 210 U.S.P.Q. 148 (S.D.N.Y.1980), *Cue Publishing Co. v. Colgate-Palmolive Company*, 45 Misc.2d 161, 256 N.Y.S.2d 239 (Sup. Ct.N.Y.Co.) *aff'd*, 23 A.D.2d 289, 259 N.Y. S.2d 377 (1st Dept. 1965). Plaintiffs' and

defendants' works are so different, the variations upon some of plaintiffs' phrases so distinct, and the use of some of plaintiffs' characters' names so contrasted with that of plaintiffs' works that plaintiffs cannot be said to be in danger of suffering any dilution or damage. There is thus no merit in the contention that defendants' works violated the anti-dilution statute. *See Ringling Bros.—Barnum & Bailey Combined Shows, Inc. v. Chandris America Lines, Inc.,* *supra,* 321 F.Supp. 707, 713 (S.D.N.Y.1971). Therefore, summary judgment is granted as to this claim as well.

## CONCLUSION

In accordance with the above opinion, the court grants defendants' motion for summary judgment.