**AMERICAN OPTICAL CORPORATION,**
Plaintiff,

v.

**NORTH AMERICAN OPTICAL**
**CORPORATION, Defendant.**

No. 77–CV–324.

United States District Court,
N. D. New York,

Dec. 10, 1979.

Whiteman Osterman & Hanna, Albany, N. Y., for plaintiff; Michael Whiteman, Albany, N. Y., of counsel.

Rogers Hoge & Hills, New York City, for plaintiff; William F. Weigel, Charles J. Raubicheck, New York City, of counsel.

Nolan & Heller, Albany, N. Y., for defendant; Richard H. Weiner, Albany, N. Y., of counsel.

JAMES T. FOLEY, Chief Judge.

## MEMORANDUM—DECISION and ORDER

This is a civil action for unfair competition, false representation of goods in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trademark infringement, and violation of New York's anti-dilution statute, N.Y.Gen.Bus.Law § 368–d. Plaintiff American Optical Corporation (American Optical) is a Delaware corporation engaged in the manufacture and interstate sale of a wide range of optical and ophthalmic products, including eyeglass frames. Defendant North American Optical Corporation (North American Optical) is a New York corporation engaged in the interstate sale of eyeglass frames.

Plaintiff commenced this action by filing its complaint on August 26, 1977. Count One alleges that the defendant's use of the corporate name and trading style NORTH AMERICAN OPTICAL CORPORATION in connection with the sale, advertising, and promotion of its optical products without the consent of plaintiff so resembles plaintiff's corporate name AMERICAN OPTICAL CORPORATION and trade name AMERICAN OPTICAL as to be likely to cause confusion among the eye care professions, the optical trade, and the consuming public, thus constituting unfair competition. Complaint, ¶¶ 5–14.

Count Two of the complaint alleges that the defendant's use of the corporate name and trading style NORTH AMERICAN OPTICAL CORPORATION in connection with the sale, advertising, and promotion of its optical products constitutes a false designation of origin and false representation used in connection with its products, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Complaint, ¶¶ 15–19.

Count Three of the complaint alleges that the defendant's use of the trademark NaoC in connection with the interstate distribution of its eyeglass frames without plaintiff's consent has infringed plaintiff's rights in its trademarks AO and AOCO, which have been used by the plaintiff for its optical and ophthalmic products including eyeglass frames since 1885, and which are duly registered with the United States Patent and Trademark Office. Complaint, ¶¶ 20–30.

Count Four of the complaint alleges that the defendant's use of the corporate name and trading style NORTH AMERICAN OPTICAL CORPORATION and of the trademark NaoC is likely to dilute the distinctive quality of the plaintiff's trade name AMERICAN OPTICAL and trademarks AO and AOCO, and is likely to injure the plaintiff's business reputation, in violation of the New York anti-dilution statute, N.Y.Gen. Bus.Law § 368–d.

Jurisdiction is predicated on 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b). Complaint, ¶ 4. The complaint concludes with a prayer for injunctive relief, an accounting of profits, attorneys' fees, and costs.

Defendant filed its answer on October 20, 1977, denying plaintiff's allegations and raising the affirmative defenses of estoppel, waiver, laches, and failure to state a claim.

Following pretrial discovery, plaintiff filed the instant motion for summary judgment pursuant to Fed.R.Civ.P. 56. The motion seeks judgment on all counts, restricting the claims for infringement and dilution to plaintiff's registered trademark AO. Similarly, the sole remedy now sought is injunctive relief. The record now submitted consists of the pleadings, motion papers, affidavits, exhibits, deposition transcripts, and briefs filed by each side, and the motion for summary judgment is ready for disposition.

For the reasons detailed herein, and after careful consideration of all of the above, it is my judgment that plaintiff's motion for summary judgment should be and hereby is granted.

The following facts emerge from the record as submitted.

Plaintiff American Optical was organized in 1962. It is the successor in interest of American Optical Company, a voluntary association of the Commonwealth of Massachusetts organized in 1869. From that time to the present, plaintiff and its predecessor have been continuously engaged in the manufacture and sale of a wide range of optical and ophthalmic products, from lenses and eyeglass frames to optical and ophthalmic equipment and diagnostic devices. These products have been and are currently sold in all 50 states and throughout the world. Consequently, plaintiff has come to be known and referred to by the eye care professions, the optical trade, and the consuming public as AMERICAN OPTICAL or AO.

Plaintiff has advertised and promoted its optical and ophthalmic products throughout the United States and the world for many years under the name AMERICAN OPTICAL. This publicity has been directed to both the eye care professions and the optical trade through advertising materials and trade journals such as *Optometric Management, Optical Management, Optometric Monthly, Frames* magazine, *20/20* magazine, *The Blue Book of Optometrists,* and *The Red Book of Ophthalmology.*

In addition, American Optical has also advertised and promoted its products in several national and regional trade shows and conventions. These include the annual conventions of the American Optometric Association, the Opticians Association of America, the American Academy of Ophthalmology, the New England Council of Optometry, the Southern Council of Optometry, Opti-Fair East, and Opti-Fair West. Recently, American Optical has begun advertising and promoting its optical products to the public generally via the national media with spots on the "Today" Show, the "Seven O'Clock News," and an advertisement in *National Geographic* magazine.

Of similar longstanding use and widespread promotion is plaintiff's logo AO. In January of 1885, plaintiff's predecessor American Optical Company adopted and began to use the term AO as a trademark for many of its optical and ophthalmic products. Such use by plaintiff and its predecessors has continued to the present. The mark AO has been duly registered in the United States Patent and Trademark Office, among which are those bearing the numbers 268,217; 268,220; 632,197; and 907,993. Each of these registrations is owned by the plaintiff and is presently in effect.

As a result of its lengthy and extensive sale and promotion of its products, plaintiff has developed and enjoys a professional good will of considerable value. Annual sales for 1978 were in excess of $400,000,000, and in no year since 1970 have plaintiff's sales been less than $230,000,000. All such sales were under the name AMERICAN OPTICAL and/or under the mark AO. Advertising and promotion expenditures exceeded $13,000,000 in 1978 and have exceeded $5,000,000 annually since 1970, all of which publicity featured the name AMERICAN OPTICAL and/or the mark AO.

Defendant North American Optical's genesis is of a much more recent vintage. A New York corporation organized in August of 1976 and located in Oneonta, New York, defendant commenced the interstate sale of eyeglass frames on October 8, 1976. It adopted the corporate name NORTH AMERICAN OPTICAL CORPORATION and uses the trademark NaoC for its optical products. Defendant solicits orders by telephone and sells eyeglass frames by mail in all 50 states, doing approximately 70% of its business in the Southwest. Monthly gross sales are approximately $40,000.

Defendant distributes a catalog to its customers, and disseminates advertising and promotional materials which bear, either separately or in combination, the name NORTH AMERICAN OPTICAL CORPORATION and the mark NaoC. Its pack-

ages, labels, statements, invoices, and letterhead also bear this name and/or mark. Defendant advertises and promotes its products monthly in *Frames* magazine, and participates annually in an optometric meeting in Dallas, Texas. An exhibit submitted to the Court, consisting of 18 pairs of defendant's frames and identified as samples of every type of frame it distributes, shows that usually each is stamped with either the name NORTH AMERICAN OPTICAL or the mark NaoC.

Plaintiff first learned of defendant's existence in May 1977, when defendant's application to register the mark NaoC as a trademark for eyeglass frames in the United States Patent Office was published for opposition. American Optical filed a timely notice of opposition to defendant's application, and commenced this action in August 1977 upon defendant's refusal to cease use of the name NORTH AMERICAN OPTICAL CORPORATION and the mark NaoC. Upon consent of the parties, the Patent and Trademark Office proceeding has been suspended pending the outcome of this action.

## DISCUSSION

It is fundamental that on a motion for summary judgment under Fed.R.Civ.P. 56, the movant bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In accord with General Rule 10(e) of this Court, both parties have submitted statements setting forth their respective contentions as to the presence or absence of such issues. This Court shares the established judicial hesitancy to grant such relief in trademark cases unless clearly appropriate. *Marcus Breier Sons, Inc. v. Marvlo Fabrics, Inc.*, 173 F.2d 29 (2d Cir. 1949); *Car-Freshner Corp. v. Auto Aid Manufacturing Corp.*, 461 F.Supp. 1055 (N.D.N.Y.1978). Nonetheless, to withhold such a remedy where warranted would be to eviscerate an important procedure provided by the federal rules. *Community of Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494 (2d Cir. 1962). The principles underlying these two policies have guided my consideration of each of plaintiff's four claims.

### A. *Unfair Competition*

American Optical alleges in Count One of its complaint that defendant's use of the trade name NORTH AMERICAN OPTICAL and corporate name NORTH AMERICAN OPTICAL CORPORATION in connection with the sale and promotion of its products constitutes unfair competition in that such use is likely to cause confusion with plaintiff's use of the trade name AMERICAN OPTICAL and corporate name AMERICAN OPTICAL CORPORATION. While jurisdiction of this claim exists by virtue of both diversity of citizenship, 28 U.S.C. § 1332, and the pendent jurisdiction provisions of 28 U.S.C. § 1338(b), it is clear that state law governs its resolution, here that of New York. *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774, 780–81 (2d Cir. 1964), *cert. denied*, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965); *Thomson Industries, Inc. v. Nippon Thompson Co.*, 298 F.Supp. 466, 478 (E.D.N.Y.1968).

The law of trade names and trademarks is but a branch of the broader law of unfair competition which, in a case such as this, is primarily concerned with the prevention of consumer confusion. *Safeway Stores, Inc. v. Safeway Properties, Inc.*, 307 F.2d 495, 497 (2d Cir. 1962); *Dell Publishing Co. v. Stanley Publications, Inc.*, 9 N.Y.2d 126, 133, 211 N.Y.S.2d 393, 172 N.E.2d 656 (1961); *Sample, Inc. v. Porrath*, 41 App. Div.2d 118, 121–22, 341 N.Y.S.2d 683 (4th Dept. 1973), *aff'd*, 33 N.Y.2d 961, 353 N.Y. S.2d 733, 309 N.E.2d 133 (1974). While the understanding of their meanings sometimes overlaps, a "trade name" is the corporate or business name symbolizing the reputation of a business as a whole, whereas a "trademark" is a term identifying and distinguishing a business's products. *American Steel Foundries v. Robertson*, 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317 (1926). Protection is afforded against the confusing use of corporate or trade names on the same basic principles applicable to trademarks. *Id.; David B. Findlay, Inc. v. Find-*

448

*lay,* 18 N.Y.2d 12, 273 N.Y.S.2d 422, 219 N.E.2d 872, *cert. denied,* 385 U.S. 930, 87 S.Ct. 289, 17 L.Ed.2d 212 (1966).

■ The use of a particular trade name constitutes unfair competition where the name is distinctive, and its use by another creates a likelihood of confusion in the minds of purchasers. *Thomson Industries, Inc. v. Nippon Thompson Co., supra,* 298 F.Supp. at 478; *Federated Purchaser, Inc. v. Federated Electronics, Inc.,* 34 Misc.2d 108, 228 N.Y.S.2d 298 (Sup.Ct.N.Y.Co.1962), *aff'd without opinion,* 18 App.Div.2d 795, 236 N.Y.S.2d 939 (1st Dept.1963). A showing of actual confusion, ever difficult to establish, is not a prerequisite to obtaining relief. *W. E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 661–62 (2d Cir. 1970).

Arguing that proof of what has unhappily come to be known as secondary meaning is unnecessary, plaintiff contends that its name, which adds the word OPTICAL to the term AMERICAN, is inherently distinctive. *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916) (AMERICAN GIRL shoes); *American Plan Corp. v. State Loan & Finance Corp.,* 365 F.2d 635 (3d Cir. 1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 719, 17 L.Ed.2d 548 (1967) (AMERICAN PLAN CORPORATION insurance); *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609 (7th Cir. 1965) (AMERICANA hotels); *Wilco Co. v. Automatic Radio Manufacturing Co.,* 255 F.Supp. 625 (D.Mass.1966) (ALL AMERICAN radios). These cases are inapposite. In each, the term joined with the word AMERICAN was not descriptive of the products being sold. That was the situation in *American Radio Stores, Inc. v. American Radio & Television Stores Corp.,* 17 Del.Ch. 127, 150 A. 180 (1930), also relied upon by plaintiff, but "the *American Radio* case goes even further than the general law in holding that an exclusive right may be established in a name which is a combination of the words 'American' and the goods in which plaintiff deals." *American Plan Corp. v. State Loan & Finance Corp., supra,* 365 F.2d at 638.

■ In the same vein, and equally unavailing here, is plaintiff's allusion to cases in which the court dispenses with proof of secondary meaning and focuses solely on the fairness of the business practice in issue. *See, e. g., Santa's Workshop, Inc. v. Sterling,* 282 App.Div. 328, 122 N.Y.S.2d 488 (3d Dept. 1953). While that approach is proper in a case in which the gravamen is predatory conduct constituting tortious misappropriation of commercial good will, it is not here where the proof is directed toward the likelihood of consumer confusion. *See Speedry Products, Inc. v. Dri Mark Products, Inc.,* 271 F.2d 646, 648–50 (2d Cir. 1959). This is not to say that considerations of fairness are necessarily irrelevant; it is merely to indicate that the element of secondary meaning is not.

■ Plaintiff's name combines a geographic designation (AMERICAN) with a term descriptive of its products (OPTICAL). As such, its distinctiveness turns upon its having acquired a secondary meaning, "a meaning which suggests the company to the public at the very mention of the trade name." *National Color Laboratories, Inc. v. Philip's Foto Co.,* 273 F.Supp. 1002, 1003 (S.D.N.Y.1967). Among the factors relevant to this issue are length and manner of use, amount and manner of advertising, volume of sales, and consumer testimony. *RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058 (2d Cir. 1979); *Saratoga Vichy Spring Co. v. Lehman,* 79–CV–151 (N.D. N.Y. August 24, 1979), *aff'd,* slip op. 3339 (2d Cir. June 5, 1980). To my mind, there is no question on this record but that plaintiff's name has acquired a secondary meaning.

Plaintiff and its predecessor have manufactured and sold optical and ophthalmic products under the trade name AMERICAN OPTICAL since 1869. Plaintiff has advertised and promoted its products under this name for many years, and done so in a number of national and regional optical conventions and shows, as well as recently in several television commercials and a national magazine. Moreover, Fred L. Beckman, O.D., an optometrist practicing in Fort

Worth, Texas, and Robert Johnston, an optician located in Tulsa, Oklahoma, both submitted affidavits testifying that they recognize the name AMERICAN OPTICAL as identifying plaintiff and its products exclusively. Finally, when Francis X. Sullivan, defendant's president, was asked on deposition whether he had heard of American Optical Corporation, he replied, "Hasn't everyone?"

■ Turning to the issue of likelihood of confusion, the relevant factors for trade names, like those for trademarks, include the strength of plaintiff's name, the similarity of plaintiff's and defendant's names, the proximity of the products, and any existence of actual confusion. *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126 (2d Cir. 1979); *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097 (2d Cir. 1969), *cert. dismissed*, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970). Such factors are relative, and no one is determinative by either its presence or absence.

In my judgment, it is established without challenge that plaintiff has a strong trade name. While I can agree with defendant that the name is not arbitrary or fanciful in the classic sense, defendant has not submitted any evidence controverting the name's acquisition of a secondary meaning. It is therefore distinctive and entitled to broad protection.

Nor is there any issue as to the similarity of the two names. The test is one of resemblance rather than identity. *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 315 F.Supp. 45, 50 (S.D.N.Y.1970), *aff'd*, 437 F.2d 566 (2d Cir. 1971). In appearance, pronunciation, and meaning, the names AMERICAN OPTICAL and NORTH AMERICAN OPTICAL are virtually identical. Indeed, defendant's name appropriates the entire name of plaintiff. *Cf. Wella Corp. v. California Concept Corp.*, 558 F.2d 1019 (C.C.P.A.1977); *Coca-Cola Bottling Co. v. Joseph E. Seagram & Sons, Inc.*, 526 F.2d 556 (C.C.P.A.1975); *Application of West Point-Pepperell, Inc.*, 468 F.2d 200 (C.C.P.A. 1972).

In his affidavit, defendant's president states that in the kind of advertising done in *Frames* magazine which is attached thereto as an exhibit, defendant uses its trademark NaoC and not its full corporate name. While that assertion is true as far as it goes, it does not go far enough. Plaintiff introduced additional advertising published by defendant in *Frames* employing both defendant's trademark and corporate name. Affidavit of Charles J. Raubicheck, Exhibit C. Moreover, certain pairs of defendant's frames bear the stamp NORTH AMERICAN OPTICAL. In short, the exhibits as a whole demonstrate that the manner in which defendant utilizes its name does not negative its similarity to plaintiff's, nor its propensity to confuse.

The products of the parties are proximate in every respect. Both sell identical wares—eyeglass frames. The fact that plaintiff's offerings include other products as well is not here relevant. Both plaintiff and defendant sell their frames in all 50 states. Both also pursue the same customers—opticians and optometrists, two of which, Messrs. Beckman and Johnston, attest to the likelihood of confusion in their affidavits.

■ Since it is undisputed that defendant was aware of plaintiff when defendant adopted its name, plaintiff asks the Court to infer that such adoption was made in bad faith. In light of defendant's protestation of innocence at Mr. Sullivan's deposition, it would be improper for the Court to resolve the issue on this motion. However, defendant incorrectly argues that summary judgment is thereby precluded. To the contrary, wrongful intent is not a necessary element of an action for unfair competition under New York law. *David B. Findlay, Inc. v. Findlay, supra*, 18 N.Y.2d at 19, 273 N.Y.S.2d 422, 219 N.E.2d 872; *Charles S. Higgins Co. v. Higgins Soap Co.*, 144 N.Y. 462, 471, 39 N.E. 490 (1895).

■ Finally, in response to plaintiff's demonstration of a strong trade name, similarity between these two names, product identity, market identity, and consumer testimony as to confusion, defendant submits two conclusory affidavits by optometrists denying personal confusion or its likelihood among others. In light of the uncontroverted facts established on this record, it is my judgment that these are insufficient to raise a material issue necessitating a trial. Plaintiff is entitled to summary judgment on its unfair competition claim.

### B. False Designation of Origin; False Representation

American Optical alleges in Count Two of its complaint that defendant's use of the corporate and trade name NORTH AMERICAN OPTICAL CORPORATION for the sale, advertising, and promotion of its optical products constitutes a false designation of origin and false representation in connection with its goods in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

■ Cases construing this statute in situations similar to the one at bar establish that an actionable violation occurs where a defendant employs a trade name or trademark confusingly similar to that of plaintiff. The likelihood of confusion, rather than actual confusion, is the test. It is not necessary that the false designation of origin or false description be willful or intentional. Nor must the consumer believe that the item actually originated with the plaintiff. It is sufficient that it appear that plaintiff may have sponsored or otherwise approved of defendant's use. These precepts accord with the statute's remedial nature which is to be broadly construed. See *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200 (2d Cir. 1979); *CBS Inc. v. Springboard International Records*, 429 F.Supp. 563 (S.D.N.Y.1976); *Apollo Distributing Co. v. Apollo Imports Inc.*, 341 F.Supp. 455 (S.D.N.Y.1972); *Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288 (S.D.N.Y.1972); *Geisel v. Poynter Products Inc.*, 283 F.Supp. 261 (S.D.N.Y.1968).

■ On this record, there is no factual issue as to any matter here relevant. As concluded above, defendant's use of the name NORTH AMERICAN OPTICAL so resembles the plaintiff's trade name AMERICAN OPTICAL that it creates a likelihood of confusion between its name and the plaintiff's name, between its business and plaintiff's business, and between its products and plaintiff's products. To my mind, plaintiff has demonstrated clearly a violation of section 43(a), and is entitled to summary judgment.

### C. Trademark Infringement

In Count Three of the complaint, American Optical alleges that defendant's use of the trademark NaoC in connection with the interstate distribution of its eyeglass frames without plaintiff's consent has infringed plaintiff's rights in its registered trademark AO. Count Three alleges both common law trademark infringement and infringement of a registered mark.

■ As set forth in part A, *supra*, the criteria for establishing common law trademark infringement are identical to those for trade name infringement, i. e., secondary meaning acquired by plaintiff's mark and a likelihood of confusion between plaintiff's and defendant's marks. Under the Lanham Act, any person who uses in commerce any colorable imitation of a registered trademark in connection with the sale, offering for sale, distribution, or advertising of goods without the consent of the registrant, which use is likely to cause confusion or mistake or to deceive, is liable to the registrant for trademark infringement. 15 U.S.C. § 1114(1). A "colorable imitation" includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive. 15 U.S.C. § 1127. Again, likelihood of confusion is the keystone for injunctive relief from trademark infringement under the Lanham Act. *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686 (2d Cir. 1970), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).

Under principles of common law trademark infringement, the record establishes without challenge that plaintiff's trademark has acquired a secondary meaning. Plaintiff and its predecessor have used the term AO as a trademark for optical and ophthalmic products continuously from 1885 to the present day, either within an overlapping format in a shield design and/or as block letters next to one another. This mark is used extensively in advertising and promotional literature for such products. Further, Messrs. Beckman and Johnston, members of the trade, have attested that they recognize the trademark AO as identifying plaintiff and its products exclusively. Defendant's president Sullivan acknowledged that AO refers to plaintiff.

In my judgment, there is also no question but that a likelihood of confusion exists between the marks in issue. Defendant's mark, NaoC, is highly similar to plaintiff's mark, AO. Not only has defendant appropriated plaintiff's entire mark, but it has highlighted it by putting it in lower case letters. The marks are used on identical goods which are sold to identical customers in a nationwide market.

Of considerable persuasion here is the decision in *American Optical Corp. v. Southwest Petro-Chem., Inc.*, 175 U.S.P.Q. 317 (T.T.A.B.1972). Plaintiff was there successful in opposing registration of the trademark AOC for a bearing lubricant on the ground that it was confusingly similar to plaintiff's registered mark AO. Here, the addition of extra letters arranged in such a way as to center attention on plaintiff's mark is insufficient to negative a likelihood of confusion.

In light of plaintiff's demonstration of the strength of its mark, and the proximity of the parties' products in the market, the bald assertions in defendant's two optometrists' affidavits that they see no likelihood of confusion are insufficient as a matter of law to preclude entry of summary judgment.

## D. *Dilution*

Count Four of the complaint alleges that defendant's use of the trade name NORTH AMERICAN OPTICAL and the trademark NaoC is likely to dilute the distinctive quality of the plaintiff's trade name AMERICAN OPTICAL and trademark AO, and likely to injure plaintiff's business reputation, in violation of N.Y.Gen.Bus.Law § 368–d.

New York's anti-dilution statute is designed to prevent trademark or trade name dilution. "[T]he potency of a mark may be debilitated by another's use. This is the essence of dilution." *Mortellito v. Nina of California, Inc., supra,* 335 F.Supp. at 1296.

The New York Court of Appeals delineated the elements of this statutory cause of action in *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (1977). The statute forbids the use of a name or mark likely to dilute the distinctive quality of a name in use. Thus, plaintiff must possess a strong mark, i. e., one which is either inherently distinctive, or has acquired a secondary meaning capable of dilution. The parties need not be competitors, nor need there be any showing of confusion. *See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., supra,* 604 F.2d at 205 n.8.

Plaintiff's right to relief under this statute is clear. Having established secondary meaning for its name and mark, plaintiff has shown them to be distinctive. Although not necessary to prevail, plaintiff has shown that both it and defendant are competitors, and that there is a likelihood of confusion between their businesses and products. There is no question but that defendant's continued use of its name and mark will erode the distinctiveness which plaintiff has developed at considerable expense and with marked success. The record therefore warrants entry of summary judgment on this count as well for plaintiff.

## E. *Affirmative Defenses*

Defendant pleads four affirmative defenses, all of which are without merit.

Plaintiff neither has waived nor is estopped from pursuing the relief which it seeks in this action. It has been vigilant in challenging other alleged infringers. Moreover, the existence of other wrongdoers is not an excuse for defendant's misconduct. *Tisch Hotels, Inc. v. Americana Inn, Inc., supra*, 350 F.2d at 614; *United States Jaycees v. San Francisco Junior Chamber of Commerce*, 354 F.Supp. 61, 73–74 (N.D.Cal.1972), *aff'd*, 513 F.2d 1226 (9th Cir. 1975).

Nor is plaintiff guilty of laches. This action was commenced by plaintiff within three months of its having learned of defendant's existence, and only after it filed an opposition to defendant's registration application and unsuccessfully sought defendant's voluntary cessation of use of its name and mark.

Finally, as is now apparent, defendant's allegation that the complaint fails to state a claim is patently frivolous.

## CONCLUSION

In light of the foregoing, it is my conclusion that plaintiff is entitled to summary judgment on Counts One through Four of the complaint. An appropriate order in accord with this decision and delineating the scope of injunctive relief shall be submitted by the attorneys for the plaintiff, if consented to, otherwise settled on five days' notice.

It is so Ordered.