GUCCI AMERICA, INC., and Polo
Ralph Lauren Corporation,
Plaintiffs,

v.

ACTION ACTIVEWEAR, INC., Azriel Uzi
Lewin, Josef's, Samuel Josef, Ari Gav-
rielli, and John Does 2–10, Defendants.

No. 89 Civ. 8314 (PKL).

United States District Court,
S.D. New York.

March 28, 1991.

Lieberman Rudolph & Nowak (Milton Springut and Henry Pitman, of counsel), New York City, for plaintiffs.

Silverglad & Marder (Hyman Silverglad, of counsel), New York City, for defendants.

## ORDER AND OPINION

LEISURE, District Judge:

This is an action for trademark infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114, and for unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under common law. Plaintiffs now move for summary judgment on the issue of liability. For the reasons set forth below, plaintiffs' motion is granted.

## BACKGROUND

The essential facts in this action are uncontroverted.[1] Gucci America, Inc., and Polo Ralph Lauren Corporation (hereinafter referred to respectively as "Gucci" and "Polo," and collectively as "plaintiffs") are world-famous fashion houses that style and sell diverse articles of clothing and accessories for men, women and children. Plaintiffs are owners and users of a number of trademarks, and own several United States Trademark Registrations.[2] These marks are properly registered and valid. It is undisputed that the plaintiffs maintain high quality standards and limit their distribution in order to maintain the exclusive image of their products. It is also undisputed that plaintiffs' marks have acquired secondary meaning indicative of origin, relationship, sponsorship and association with the plaintiffs.

Defendant Action Activewear, Inc. ("Activewear") is a corporation that operates a retail shop located at 124 Orchard Street, New York, New York, specializing in the sale of unisex sportswear. Activewear, owned and managed by defendant Azriel Uzi Lewin, has been in operation since 1989. Defendant Josef's is a corporation selling unisex sportswear at 142 Orchard Street. This store, owned by defendant Samuel Josef and managed by defendant Ari Gavrielli, his son-in-law, has been in business for over fifteen years. It is undisputed that defendants offered for sale to the public garments bearing the Gucci and Polo tradenames and that these garments were not manufactured by, or for, the plaintiffs.

---

1. In accordance with United States District Courts for the Southern and Eastern Districts of New York Local Civil Rule 3(g), plaintiffs have submitted a detailed statement of uncontested material facts as to which they contend there are no genuine issues to be tried. Defendants have submitted a 3(g) statement that does not dispute any of plaintiffs' contentions, but merely states that defendants do not know whether the merchandise seized from them contained valid trademarks of plaintiffs or was counterfeit. *See* Defendants' Statement of Undisputed Facts and Issues of Law Pursuant to Rule 3(g) ¶¶ 1, 2.

   Rule 3(g) unequivocally states that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." *See also Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984) (facts set forth in movant's Rule 3(g) statement that are uncontroverted by nonmovant's statement are properly deemed admitted). Accordingly, the Court deems all of the facts set forth in plaintiffs' 3(g) statement to be admitted, and the statement of the background facts in this opinion is drawn largely from plaintiffs' Rule 3(g) statement.

2. Gucci's registered trademarks include: (1) No. 1,158,170 of June 23, 1981, for the interlocking "GG" symbol; (2) No. 1,106,722 for the double "GG" symbol; (3) No. 1,168,477 for the word mark GUCCI; and (4) No. 1,236,415 of May 3, 1983, for a variation of the double "GG" symbol.

   Polo's registered trademarks include: (1) No. 984,005 of May 14, 1974, for the mark RALPH LAUREN, with a drawing of a polo player between the two words; (2) No. 1,050,722 of October 19, 1976, for the mark RALPH LAUREN, with a drawing of a polo player between the two words; (3) No. 1,214,105 of October 26, 1982, for the word RALPH LAUREN; (4) No. 1,363,-459 of October 1, 1985, for the mark POLO; and (5) No. 1,364,971 of October 8, 1985 for the mark POLO RALPH LAUREN, with a drawing of a polo player between the words POLO and RALPH.

On December 18, 1989 an *ex parte* order issued by this Court was executed by the United States Marshall for the Southern District of New York, who seized from defendants and impounded merchandise bearing the Gucci and Polo trademarks, as well as heat transfers bearing the Gucci trademarks.

Plaintiffs now move for summary judgment solely on the issue of liability, and request that the issues of injunctive relief, the amount of damages, the award of profits, and the grant of attorneys' fees be referred to a United States Magistrate Judge or reserved for a separate proceeding before this Court.

## DISCUSSION

### The Applicable Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)).

The substantive law governing the case will identify the facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson, supra*, 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Id.*, at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989).

Once a motion for summary judgment is properly made, however, the burden then shifts to the non-moving party, which "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Conclusory allegations are not sufficient to create a genuine issue. "[T]o avoid summary judgment, a party 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . .'" *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991) (quoting *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "The non-movant cannot 'escape judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quoting *Borthwick v. First Georgetown Secur., Inc.*, 892 F.2d 178, 181 (2d Cir.1989) and *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)).

### Liability for Trademark Infringement and Unfair Competition

Plaintiffs have moved for summary judgment with respect to defendants' liability

for trademark infringement under section 32 of the Lanham Act, 15 U.S.C. § 1114, and for unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under common law. The elements required to succeed on these claims are substantially the same and are examined together. *See Lois Sportswear U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867 (2d Cir.1986); *Radio Today, Inc. v. Westwood One, Inc.*, 684 F.Supp. 68, 72 (S.D.N.Y.1988); *Corning Glass Works v. Jeannette Glass Co.*, 308 F.Supp. 1321, 1327–28 (S.D.N.Y.), *aff'd*, 432 F.2d 784 (2d Cir.1970); *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 543, 399 N.Y.S.2d 628, 631, 369 N.E.2d 1162 (1977); *Dell Publishing Co. v. Stanley Publications, Inc.*, 9 N.Y.2d 126, 211 N.Y.S.2d 393, 172 N.E.2d 656 (1961).

■ To prevail on their claims for trademark infringement and unfair competition, plaintiffs must show that 1) plaintiff owns a valid trademark, and 2) the defendants' use of the trademark creates a likelihood of confusion as to the source of the goods.[3] *See Lois Sportswear, supra*, 799 F.2d at 871; *C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 17 (2d Cir. 1985); *Karmikel Corp. v. May Dep't Stores Co.*, 658 F.Supp. 1361, 1367 (S.D.N.Y.1987).

■ It is undisputed that plaintiffs are the owners of the trademarks at issue in this case, and that those trademarks are valid. Thus, the first prerequisite to liability is satisfied. In determining the presence of the second element—"likelihood of confusion"—the Court will employ the time-honored balancing test set forth by Judge Friendly in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). The factors enunciated

for this test are: "1) the strength of the mark, 2) the degree of similarity between the two marks, 3) the proximity of the products, 4) the likelihood that the senior user of the mark will bridge the gap, 5) evidence of actual confusion, 6) the junior user's bad faith *vel non* in adopting the mark, 7) the quality of the junior user's product, and, finally, 8) the sophistication of the relevant consumer group." *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1225 (2d Cir.1987) (citing *Polaroid, supra*, 287 F.2d at 495). In the case presently before the Court, these factors, when considered together, lead the Court to conclude that a likelihood of confusion as to the source of the relevant products exists.

### 1) Strength of the Marks

■ "The distinctiveness of a mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular ... source, determines the mark's strength or weakness." *Edison Bros. Stores, Inc. v. Cosmair, Inc.*, 651 F.Supp. 1547, 1554 (S.D.N.Y.1987) (citing *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979)). Two factors have been used to measure the relative strength of a mark: 1) the level of protection of the mark, and 2) the recognition value of the mark in the marketplace as identifying the source of the goods or services. *See id.* at 1554.

■ With respect to the first factor, it is well settled that there are four levels of trademark protection, which, progressing from least to most protected, are 1) generic, 2) descriptive, 3) suggestive, and 4) fanciful or arbitrary. *See Centaur Communications, supra*, 830 F.2d at 1220 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir.1976) (Friendly, J.)).

---

**3.** The chief difference among the three bases of plaintiffs' claims is that § 43(a) and New York common law unfair competition claims may be brought to enforce unregistered trademarks, while § 32 applies only to registered trademarks. In certain cases, courts have required plaintiffs bringing unfair competition actions under New York law to show that the mark has acquired a "secondary meaning." *See 815 Tona-*

*wanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 649 (2d Cir.1988); *Allied Maintenance, supra*, 42 N.Y.2d at 542 n. 2, 399 N.Y.S.2d at 631 n. 2, 369 N.E.2d at 1164 n. 2; *Adirondack Appliance Repair, Inc. v. Adirondack Appliance Parts, Inc.*, 148 A.D.2d 796, 538 N.Y.S.2d 118 (3d Dep't 1989). In the case at bar, however, as discussed *infra*, the uncontroverted evidence establishes secondary meaning in plaintiffs' marks.

■ The Gucci marks at issue consist, *inter alia*, of variations of a "GG" symbol, green and red stripes, and a heraldic crest. The Polo marks include various combinations of the words "POLO" and "RALPH LAUREN" with a representation of a polo player on a horse. Such marks are clearly fanciful rather than descriptive or suggestive of the goods so marked. *See Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.*, 592 F.Supp. 648, 651 (D.Mass.1984); *see also Gucci America, Inc. v. Dart, Inc.*, 715 F.Supp. 566, 568 (S.D.N.Y.1989); *Gucci Shops, Inc. v. Dreyfoos & Assocs., Inc.*, 222 U.S.P.Q. 302, 303, 1983 WL 425 (S.D.Fla.1983); *Polo Fashions Inc. v. Diebolt, Inc.*, 634 F.Supp. 786, 789 (D.Kan.1986); *Polo Fashions, Inc. v. B. Boman & Co.*, 229 U.S.P.Q. 701, 703, 1986 WL 4073 (S.D.N.Y.1986); *Polo Fashions, Inc. v. Gordon Group*, 627 F.Supp. 878, 887 (M.D.N.C.1985). Fanciful marks such as these constitute "strong" trademarks, which are accorded the broadest protection against infringement. *See, e.g., Lois Sportswear, supra*, 799 F.2d at 871; *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 492 (1st Cir.1981).

The second factor, which focuses on the power of the mark to identify the source of the goods, is similar to the concept of "secondary meaning," in that "'the mark comes to identify not only the goods but the source of those goods.'" *Centaur Communications, supra*, 830 F.2d at 1221 (quoting *20th Century Wear, Inc. v. Sanmark–Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir.1987)). Registered trademarks, however, "are presumed to represent the source [of the goods or services] in the minds of the public." *Vibrant Sales, Inc. v. New Body Boutique, Inc.*, 652 F.2d 299, 304 (2d Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982).

Plaintiffs have presented uncontroverted evidence that, in the fashion sportswear industry, it is often the case that the source of the goods completely overshadows the characteristics of the goods themselves, so that what a consumer is purchasing *is* the name. Plaintiffs have produced affidavits attesting to the wide recognition and long-term use of the marks at issue here, as well as plaintiffs' considerable investment in advertising their marks and the continuing commercial success of their trademarked merchandise. It is thus clear that plaintiffs' marks have acquired secondary meaning in the minds of the public, identifying plaintiffs as the source of goods bearing those marks. *See Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir.1985); *TNT, Ltd. v. TNT Messenger Service, Inc.*, 724 F.Supp. 201, 206 (S.D.N.Y.1989). Defendants have produced no evidence to counter these assertions, and do not, in fact, dispute that plaintiffs' marks have acquired secondary meaning. In sum, plaintiffs' trademarks are very strong and deserving of protection against infringement.

### 2) Similarity of the Marks

The defendants have used Gucci and Polo marks virtually indistinguishable from the marks owned and used by plaintiffs. This extreme degree of similarity, particularly when combined with the strength of plaintiffs' marks, weighs heavily in favor of a finding of likelihood of confusion. *See Lois Sportswear, supra*, 799 F.2d at 873.

### 3) Proximity of the Products

The third factor, proximity of the products produced or sold by plaintiffs and defendants, has been described by the Second Circuit as "competitive proximity," or "whether 'it is likely that customers mistakenly will assume either that [the junior user's goods] somehow are associated with [the senior user] or are made by [the senior user].'" *Centaur Communications, supra*, 830 F.2d at 1226 (quoting *Lois Sportswear, supra*, 799 F.2d at 874). In the case at bar, the proximity of the products is apparent, since both plaintiffs and defendants are selling sportswear with the Gucci and Polo logos. Even though defendants' goods were of an inferior quality, a likelihood of confusion exists because customers could have mistakenly assumed that plaintiffs had begun producing such items, or licensing their marks to the producers of those items. *See Lois Sportswear, supra*, 799 F.2d at 874.

### 4) Bridging the Gap

This factor "looks to whether the senior user of the mark is likely to enter the market in which the junior user is operating, that is, bridge the gap." *Centaur Communications, supra*, 830 F.2d at 1227. Where, as here, the parties are selling very closely related, if not identical, products, there is no gap to bridge. *See Lois Sportswear, supra*, 799 F.2d at 874; *Scarves By Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1174 (2d Cir.1976). Hence, this factor strongly favors plaintiffs.

### 5) Evidence of Actual Confusion

Although "[e]vidence of *actual* confusion is not required to prove the likelihood of confusion between the two marks," *Centaur Communications, supra*, 830 F.2d at 1227, a finding of actual confusion will weigh in favor of the plaintiff.[4] Here, plaintiffs have provided no evidence of actual confusion. The apparently small scale and short duration of defendants' operations, however, suggests that the absence of evidence of actual consumer confusion should not weigh heavily against a finding of a likelihood of confusion. *See id.* at 1227; *cf. Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1006 (2d Cir. 1983) (lack of evidence of actual confusion over three-year period, during which defendant had "substantial" sales from as many as 81 discount food stores, "is a strong indicator that the likelihood of confusion is minimal").

### 6) The Junior User's Intent

■ It is well established that wrongful intent is not a prerequisite to an action for trademark infringement or unfair competition, and that good faith is no defense. *See Lois Sportswear, supra*, 799 F.2d at 875; *McNeilab, Inc. v. American Home Prods. Corp.*, 501 F.Supp. 517, 529 (S.D.N.Y.1980); *American Optical Corp. v. North American Optical Corp.*, 489 F.Supp. 443, 449 (N.D.N.Y.1979); *Polo Fashions, Inc. v. Extra Special Prods., Inc.*, 451 F.Supp. 555,

562 (S.D.N.Y.1978). However, the Second Circuit has repeatedly recognized that evidence "that a defendant deliberately engaged in a deceptive commercial practice" raises a presumption of consumer confusion. *Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 140 (2d Cir.1991); *see also Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 246–47 (2d Cir.1983); *Centaur Communications, supra*, 830 F.2d at 1228; *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir.1980).

■ Where the evidence "show[s] or require[s] the inference that another's name was adopted deliberately with a view to obtain some advantage from the good will, good name, and good trade which another has built up, then the inference of likelihood of confusion is readily drawn, for the very act of the adopter has indicated that he expects confusion and resultant profit." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 158 (9th Cir.), *cert. denied*, 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053 (1963). Moreover, actual knowledge of a registered mark, although not conclusive on the issue, can give rise to an inference of bad faith. *See Centaur Communications, supra*, 830 F.2d at 1228; *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir.1987).

It is uncontroverted that defendants knew of the registered marks of Gucci and Polo. Both Lewin and Gavrielli concede in sworn statements that they had seen the labels and purchased the goods because of the brand name. Declaration of Azriel Uzi Lewin, sworn to on Oct. 3, 1990, ¶¶ 7, 10; Declaration of Ari Gavrielli, sworn to on Oct. 3, 1990, ¶¶ 7, 9, 10. However, although Gavrielli has stated that the goods were sold to him out of the back of a car, contained in garbage bags, Deposition of Ari Gavrielli, dated March 27, 1990, at 61, defendants deny any knowledge that the

---

4. The standard for liability or injunctive relief must be distinguished from the requirement of either proof of actual consumer confusion or intent to deceive the public before money damages may be granted under the Lanham Act.

*See Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 139–40 (2d Cir.1991). The issue of damages, however, is not currently before the Court.

goods were counterfeit or that they had any intent to sell counterfeit goods.

The Court finds the evidence at this stage inconclusive as to defendants' intent, and, viewing the evidence most favorably to defendants, as required on a motion for summary judgment, cannot find bad faith on the part of defendants. However, since plaintiffs are entitled to relief even against a totally innocent infringer, absence of proof of bad faith is not dispositive.

### 7) The Quality of the Junior User's Product

Plaintiffs have presented uncontroverted evidence that the merchandise seized from defendants was counterfeit, and of a significantly lower quality than merchandise authorized or produced by plaintiffs. This fact weighs against a finding of likelihood of confusion, because whereas "[t]he lack of marked difference in quality between goods supports the inference that they emanate from the same source," *Centaur Communications, supra*, 830 F.2d at 1228; *see also Lois Sportswear, supra*, 799 F.2d at 875, the existence of such a difference supports an inference to the contrary. However, courts have also found that the existence of inferior infringing goods strengthens a plaintiff's "interest in protecting its reputation from debasement," *id.*, one of the major goals of the trademark laws.

### 8) Sophistication of Consumers

The final *Polaroid* factor considers the sophistication of the consumers in the relevant market. "Courts have found less likelihood of confusion where goods are expensive and purchased after careful consideration." *Pignons, supra*, 657 F.2d at 489. "Sophistication of consumers usually militates against a finding of likelihood of confusion...." *Centaur Communications, supra*, 830 F.2d at 1228 (citation omitted). Although neither plaintiffs nor defendants expressly address this point, the Court has no reason to conclude that the buyers of casual sportswear represent a particularly sophisticated group of consumers. *Cf. Pignons, supra*, 657 F.2d at 489 (buyers of expensive cameras in specialty stores are sophisticated and unlikely to be confused by similarity of marks). This factor, then, has no particular weight in the instant case.

In balancing the *Polaroid* factors, the Court concludes that the uncontroverted evidence demonstrates that a likelihood of confusion as to source exists as a result of defendants' sale of counterfeit Gucci and Polo merchandise. Accordingly, plaintiffs' motion for summary judgment on the issue of the defendants' liability for trademark infringement and both statutory and common law unfair competition is granted.

### Constitutionality of the Statutes

██ Defendants raise the issue of the constitutionality of a statute that provides for liability without intent, and argue that the provisions of the Lanham Act under which plaintiffs' claims are brought should be declared "null, void and unconstitutional as being in violation of the equal protection clause, the due process clause and for being over broad and prescribing punishment to innocent possessors of trademarked goods." Defendants' Statement of Undisputed Facts and Issues of Law Pursuant to Rule 3(g), at 2, ¶ 4. Defendants fail to present any authority in support of their argument, and this Court therefore must decline defendants' invitation to invalidate these statutes.

### CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment on the issue of defendants' liability for trademark infringement and unfair competition is granted. This matter will be referred to a United States Magistrate Judge for a hearing to determine the issues of injunctive relief, amount of damages, award of defendants' profits and grant of counsel fees.

SO ORDERED.