**LIFE INDUSTRIES CORPORATION, Plaintiff,**

v.

**STAR BRITE, Defendant.**

**No. CV 91–1659.**

United States District Court, E.D. New York.

Oct. 16, 1992.

Bauer & Schaffer by Murray Schaffer, Mineola, N.Y., for plaintiff.

Moritt, Hock & Hamroff by Robert S. Cohen, Hempstead, N.Y., Berger & Shapiro, P.C., Fort Lauderdale, Fla., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Life Industries Corporation ("plaintiff"), filed suit against Ocean Bio–Chem, Inc. and its wholly owned subsidiary, Starbrite Distributing, Inc. ("Starbrite") (collectively "defendants"), for infringement of plaintiff's rights arising under the Federal Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*, commonly known as the Lanham Act. Specifically, this action arises under §§ 34, 35 and 43(a) of the Act (15 U.S.C. §§ 1116, 1117, 1125(a)). Plaintiff seeks an injunction, an accounting, and the award of damages in excess of fifty thousand dollars. Now before the Court is defendants' motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure as to Count I of the Amended Complaint, and for dismissal of Count II, brought under New York State General Business Law § 368–d. Defendants maintain that, as a matter of law, their packaging is not confusingly similar to plaintiff's packaging. For the reasons stated below, defendants' motion is denied.

## I. BACKGROUND

Plaintiff and defendants manufacture and sell marine care products throughout

the United States. Moreover, they sell a similar product, a polysulfide caulking compound, often in the same retail outlets. Plaintiff maintains that since 1965, it has expended millions of dollars promoting the sale of its marine care products.

Defendants display, offer for sale, and sell a caulking compound under the trade name "Boat Caulk." Plaintiff alleges that Boat Caulk is packaged in a container employing a yellow background, red printing and a black band similar to the colors and configuration employed by the plaintiff's caulking compound, "Life Calk." Plaintiff further alleges that Boat Caulk's overall appearance simulates the trade dress of Life Calk, resulting in an infringement of plaintiff's rights under 15 U.S.C. § 1125(a).[1]

Plaintiff maintains that prior to 1991, defendants sold Boat Caulk under the trade name "Deck Caulk," in a container having a trade dress consisting of a white background with black lettering. Finally, at deposition, Starbrite's president, Peter Dornau, stated that he was aware of the trade dress used for plaintiff's Life Calk before changing the trade dress of Boat Caulk to yellow, black and red in 1991.

## II. DISCUSSION

The party moving for summary judgment has the burden of showing that the absence of any genuine issue as to the material facts under applicable principles of substantive law entitles it to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant is held to a strict standard to demonstrate the absence of genuine issues of fact and law. *Bishop v. Wood*, 426 U.S. 341, 347 n. 11, 96 S.Ct. 2074, 2079 n. 11, 48 L.Ed.2d 684 (1976); *Arnett v. Kennedy*, 416 U.S. 134,

139–40, 94 S.Ct. 1633, 1637–38, 40 L.Ed.2d 15 (1974). If the papers before the court disclose a real issue of credibility, or fail to clearly establish that there is no genuine issue as to any material fact, the motion must be denied. *Adickes*, 398 U.S. at 157–59, 90 S.Ct. at 1608–09; *United States v. All Right, Title & Interest in Real Property*, 901 F.2d 288, 290 (2d Cir.1990).

To prevail on a claim of trade dress infringement under 15 U.S.C. § 1125(a), a plaintiff must demonstrate that (1) the trade dress of the alleged infringer's product is confusingly similar to that of the plaintiff's product, and (2) the trade dress at issue is inherently distinctive and nonfunctional. *Two Pesos, Inc. v. Taco Cabana, Inc.*, — U.S. —, —, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992).

In *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70 (2d Cir.1988), the court considered the following factors in evaluating the likelihood of confusion of an unregistered mark under § 43(a) of the Lanham Act:

the strength of [plaintiff's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

*Hasbro*, 858 F.2d at 75 (quoting *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961)); *see also Kwik–Site Corp. v. Clear View Co., Inc.*, 758 F.2d 167, 178 (6th Cir.1985). Additionally, the court held that the aforementioned list of factors for resolving likelihood of confusion is nonexclusive. *Hasbro*, 858 F.2d at 79.

Defendants' contention that "when a manufacturer clearly identifies itself on its

---

1. Section 1125(a) (1988) provides in relevant part:

(a) Any person who, in or in connection with any goods or services, or any container for goods, uses, in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ...

shall be liable in a civil action by any person who believes he or she is or is likely to be damages by such act.

label, it cannot be held liable for trade dress infringement" is incorrect. In *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423 (Fed.Cir.1984), the court held that "[t]he legal effect of labeling a product with its manufacturer's name depends or may depend on both the prominence of the label and the type of product." *Id.* at 1446. Although clearly labeling one's product may help reduce the chance of consumer confusion, there are "products whose consumer buyers would take little notice of a maker's name or disregard a name plainly evident to the buyer's eye". *Id.* (citation omitted); *see Scan–Plast Indus. v. Scanimport America, Inc.*, 652 F.Supp. 1156, 1164 (E.D.N.Y.1987).

Unlike the microwave ovens in *Litton Systems*, the caulking material at issue here is a relatively inexpensive, routinely purchased item. In *Litton Systems*, the court noted that consumers of relatively expensive products "would exercise much more discriminating care in their purchases of those items than would the purchaser of an inexpensive, routinely purchased product...." *Litton Systems*, 728 F.2d at 1446 (citations omitted). *Accord Gucci America, Inc. v. Action Activewear, Inc.*, 759 F.Supp. 1060, 1066 (S.D.N.Y.1991) (less likelihood of confusions exists " 'where goods are expensive and purchased after careful consideration.' ") (citation omitted). Here, because plaintiff's Life Calk is relatively inexpensive and routinely purchased, a question of fact exists as to whether consumers are likely to identify it by its trade dress rather than by its brand name.

In *Chevron Chemical Co., Inc. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695 (5th Cir.1981), the court held that "[e]ven if close examination would differentiate the products, that is not sufficient to dispel the initial confusing similarity. *'The touchstone under § 43(a) is ... similarity in the overall trade dress of the products.' "* *Id.* at 704 (citation omitted) (emphasis added); *see also LeSportsac, Inc. v.*

*K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985) ("[t]he 'trade dress' of a product ... 'involves the total image of a product and may include features such as size, shape, color, or color combinations, texture [or] graphics.' ") (citation omitted); *Scan–Plast Indus.*, 652 F.Supp. at 1164 (" '[t]he test of customer confusion is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general overall impression' ") (citations omitted).

Additionally, the court held in *Chevron Chemical* that plaintiff did not need to demonstrate that its product had acquired 'secondary meaning' as that concept is known in trademark law.[2] *Chevron Chemical*, 659 F.2d at 702. *Cf. Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 618 F.2d 950, 952–53 (2d Cir.1980) (because the possible varieties of advertising, display, and packaging are virtually endless, under New York State General Business Law § 368, the principal question is whether or not the public is likely to be confused, rather than whether the first comer's trade dress has acquired secondary meaning).

In *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d Cir. 1992), the court held that "[e]vidence of intentional copying by a junior user may be indicative of an intent to create a confusing similarity between the products." (citing *Charles of the Ritz Group v. Quality King Distrib.*, 832 F.2d 1317, 1322 (2d Cir. 1987)), *accord Gucci America*, 759 F.Supp. at 1065 ("the Second Circuit has repeatedly recognized 'that evidence that a defendant deliberately engaged in a deceptive commercial practice' raises a presumption of consumer confusion.") (citation omitted).

In the instant case, plaintiff and defendants are selling similar products, often in the same retail outlets. Moreover, plaintiff maintains that since 1965, it has spent millions of dollars marketing Life Calk, along

**2.** " 'To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.' " *Two*

*Pesos*, —— U.S. at —— n. 4, 112 S.Ct. at 2756 n. 4 (quoting *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 851 n. 11, 102 S.Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982)).

with a variety of other marine care products, all with a uniform trade dress consisting of a yellow background and incorporating red and black overprinting.[3] Furthermore, Starbrite's president admitted that he was aware of Life Calk's trade dress before defendants changed the trade dress it employed for its caulking product to yellow, black and red in 1991. Under these facts, defendants' intent in changing the trade dress of Boat Caulk is a material issue of fact that cannot be determined on defendants' motion for summary judgment.

Defendants rely on *Vitarroz Corp. v. River Brand Rice Mills, Inc.*, 266 F.Supp. 981 (S.D.N.Y.1967), for the proposition that its use of a yellow background is not sufficient to establish trade dress infringement under the Lanham Act. *Vitarroz*, however, is inapposite. In *Vitarroz*, the court granted the defendant's motion for summary judgment, holding that defendant's use of the color yellow as background for its rice packaging was not sufficient to establish trade dress infringement. In *Vitarroz*, however, the plaintiff's and defendant's brand names appeared in different color lettering. Moreover, at least four other brands of "blue rose type" rice employing yellow packaging appeared in the same retail markets as plaintiff's and defendant's brands. *Id.* at 982.

Here, plaintiff's and defendants' brand names both appear in large red letters. In addition, the parties are apparently unaware of any other competitor employing a yellow background, red lettering, and black bars at the top and bottom of its packaging of this type of caulk. Thus, the issue in this case is the similarity of the particular configuration of plaintiff's and defendants' trade dress, rather than just the yellow background of their respective packages.

Finally, defendants contend that Count II of plaintiff's Amended Complaint, which alleges a pendant state law claim, should be dismissed for lack of jurisdiction if defendants' motion for summary judgment is granted on Count I. Accordingly, because defendants' motion for summary judgment

on Count I is denied, dismissal of Count II is also denied. Moreover, even if defendants' motion for summary judgment were granted, it appears that this Court would have jurisdiction over any state claims pursuant to diversity jurisdiction. 28 U.S.C. § 1332.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on Count I of plaintiff's Amended Complaint and for dismissal of Count II of the Amended Complaint is denied.

SO ORDERED.

---

**3.** At deposition, plaintiff's representative, Tilder, maintained that plaintiff will change the config-

uration of "Life Calk's" trade dress after its existing supply of labels is depleted.